**ARMSTRONG, GIBBONS**

v.

**SOUTHRIDGE INVESTMENT ASSOCIATES et al.**

**No. 89-404-Appeal.**

Supreme Court of Rhode Island.

April 24, 1991.

Joseph G. Kinder, Armstrong, Gibbons, Providence, for plaintiff.

Howard E. Walker, Hinckley, Allen, Snyder & Comen, Peter J. Comerford, Quinn,

Cuzzone & Geremia, Providence, for defendants.

## OPINION

KELLEHER, Justice.

The plaintiff in this interpleader action is the Rhode Island law firm of Armstrong, Gibbons. The facts of the controversy are undisputed. Codefendants Southridge Investment Associates (Southridge) and Robert M. Felleman (Felleman) entered into a written purchase-and-sales agreement (agreement). The agreement involved an apartment complex in West Warwick, Rhode Island. The purchase price was $3,760,000, of which $100,000 had been deposited into escrow, the balance to be paid at the closing.

The agreement, which was signed by both codefendants, contained the following provisions:

"4. *Closing Date.* The deed is to be delivered (the 'Closing') * * * sixty (60) days after the date of this Agreement. * * * It is agreed that time is of the essence of this Agreement.

" * * * *

"15. *Escrow Deposit.* * * * In the event that the Buyer shall fail to fulfill the Buyer's agreements herein, the Seller may either retain the deposit, together with all interest accrued thereon * * * or, in the alternative, the Seller may seek to enforce the terms of this Agreement.

" * * * *

"20. *Notices.* Any notices or other communication permitted or required to be given under this Agreement shall be delivered in hand or mailed * * * return receipt requested. * * * Such notices or other communications shall be deemed given on the date of the receipt evidencing the hand delivery thereof.

" * * * *

"21. *Conditions to Buyer's Obligations.* * * * If after reasonable efforts to do so, the Buyer is not able to obtain such a written commitment [for a first mortgage financing from a bank], then the Buyer, at the Buyer's option, shall have the right to terminate this Agreement by written notice given to the Seller on or before the expiration of forty-five (45) calendar days after the date of this Agreement, whereupon all deposits, together with any interest accrued thereon, shall be returned to the Buyer, and this Agreement shall terminate and be null and void. * * * If the Buyer fails to give such timely notice of termination to the Seller * * * the Buyer * * * waive[s] his rights to terminate this Agreement on account of his inability to obtain such a written commitment for first mortgage financing."

Both Felleman and a representative from Southridge signed the agreement, which is accompanied by the words "Executed as a sealed instrument as of this 24th day of December, 1987."

Felleman did not actually sign and deliver the agreement to Southridge until December 28, 1987. Nowhere, however, was there any reference to this later date in the agreement, nor for that matter was there any indication that Felleman intended this later date to be the date of execution of the agreement.

Felleman attempted to obtain financing for the apartment complex, but he was unsuccessful. Consequently, on Thursday, February 4, 1988, Felleman called his attorney, Michael B. Last (Last), and directed him to terminate the agreement. That same day Last telephoned Paul Plourde (Plourde), who is the attorney for and a partner in Southridge. Last advised Plourde that Felleman would have to terminate the agreement for want of financing. Plourde said words to the effect "I am sorry to hear that. I have enjoyed working with you. Go ahead and send your notice."

Last then dictated a termination letter that was transcribed, dated, and signed on Friday, February 5, 1988. Last then had the letter delivered to the firm's mail room with instructions that it should be sent immediately by certified mail. Unfortunately at this point there appears to have been a breakdown of communication.

For some unknown reason, the mail-room clerk failed to mail the letter. As a result the letter spent the weekend in the mail

room and was mailed the following Monday, February 8, and was delivered on February 9.[1]

The termination notice was due forty-five days from the date of execution. If the agreement was executed on December 24, 1987, the termination notice deadline would have been February 7, 1988. If, on the other hand, the agreement was executed on December 28, 1987, the termination notice would have been due no later than February 11, 1988. So, whereas the oral notice from Last to Plourde was timely given according to either execution date, the written notice was either timely or late.

In any event Felleman considered his notice timely and requested a refund of the $100,000 deposit. Southridge, however, declared a forfeiture. At this point the escrow agent filed the interpleader complaint. A Superior Court justice, after considering the cross-motions for summary judgment, declared a forfeiture and entered a judgment for Southridge. Felleman now brings this appeal before us.

Felleman raises two issues on this appeal. First, Felleman contends that the trial justice erred in concluding that the agreement was effective as of December 24, 1987, rather than as of December 28, 1987. Second, Felleman alleges that even if the agreement was effective as of December 24, 1987, the trial justice erred in declaring a forfeiture for Felleman's failure to give written notice when timely oral notice was given and Southridge suffered no harm. We shall discuss both of these issues.

■ Initially Felleman claims that he is entitled to his security deposit of $100,000 as a matter of law. He argues that the agreement was not executed until it was actually signed and delivered on December 28, 1987. As forty-five days from December 28, 1987 is February 11, 1988, Felleman claims that the written notice, delivered on February 9, 1988, was timely.

The trial justice refused to accept Felleman's argument. The trial justice noted that the agreement specifically incorporated the date December 24, 1987, and that this was the date from which all other deadlines were to be measured. After consideration of this issue, we agree with the trial justice.

As a preliminary matter, it is necessary to consider this court's standard of review when a trial justice grants a motion for summary judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure. The standard of review is the same as that which must be used by the trial justice. First, there must be no genuine issue of material fact. *Ouimette v. Moran*, 541 A.2d 855 (R.I.1988). Second, the moving party must be entitled to judgment as a matter of law. *Id.*

This court has stated that although parol evidence is admissible to establish the actual date of execution, the proper thrust of an inquiry regarding the date of execution of a contract is to determine whether the date in the document is an unseverable element of an integrated agreement. *Fram Corp. v. Davis*, 121 R.I. 583, 591, 401 A.2d 1269, 1274 (1979).

Both Felleman and Southridge agree that all facts in the record were not disputed. As there are no facts in issue, *a fortiori*, there are no material facts in issue. In addition the fact that the agreement was an integrated document is also not in dispute. The agreement stated December 24, 1987, as the date of execution. As we believe that this date was an unseverable element of the agreement as a matter of law, we find that the date of the agreement is December 24, 1987. *See Fram Corp. v. Davis*, 121 R.I. 583, 401 A.2d 1269 (1979). We therefore deny and dismiss the first ground upon which Felleman's appeal rests.

■ Moving on, Felleman argues that even if the agreement was effective as of December 24, 1987, the trial justice committed reversible error in declaring a forfei-

---

**1.** In deference to the law firm of Armstrong, Gibbons, it should be noted that the mail room mixup occurred in an out-of-state law firm.

ture for Felleman's failure to give timely written notice. Southridge, on the other hand, points to the agreement, which required written notice within forty-five days of the execution. Southridge believes that the timely oral notice from Last to Plourde, as well as the fact that there was no harm to Southridge, is irrelevant. After consideration of both arguments, we believe that the trial justice erred in entering a judgment for Southridge as a matter of law.

The first order of business is to examine our earlier decision, *Eastern Motor Inns, Inc. v. Ricci*, 565 A.2d 1265 (R.I.1989). In *Ricci*, Eastern Motor Inns, Inc. (Eastern), sought to purchase property from Armand and Shirley Ricci (Riccis). The purchase-and-sales agreement was entered into by the parties on July 15, 1986. As Eastern wished to operate a motel on the property, the agreement was subject to the procurement of a zoning change.

Later in 1986 the Riccis and Eastern executed a second agreement that allowed for a reduction of $10,000 in the selling price if Eastern agreed to a partial closing on December 30, 1986. The second agreement, which was motivated by tax considerations, incorporated the July 15, 1986 agreement. In addition the second agreement contained a "dropdead" clause.[2]

The closing was not completed by the dropdead date. Eastern filed suit for specific performance. The Riccis countered with a claim for money damages based upon three separate claims.

Insofar as *Ricci* is relevant to the matter before us, we stated in *Ricci* that the July 1, 1987 deadline agreed upon by both parties was valid and that as the contract came to an end, Eastern could not obtain specific performance. We now note, however, that in *Ricci* there was evidence in the record of dilatory action on the part of Eastern. Indeed, the Riccis testified that although they made several attempts to arrange a closing prior to the July 1, 1987 deadline, Eastern's agent was unavailable.

We believe that the facts here can be distinguished from *Ricci*. In this matter, there was no intentional dilatory behavior or bad faith on the part of Felleman. Indeed, Felleman's attorney delivered notice in a timely fashion. Consequently Southridge suffered no harm as a result of the delayed written notice. So even though Felleman's notice was technically late under the terms of the agreement, it would be unfair for Felleman to forfeit his $100,000 deposit because of delayed written notice when timely oral notice was in fact given. We refuse to support or condone a forfeiture based upon so trivial a consideration. *See Ricci*, 565 A.2d at 1278 (Weisberger, J., dissenting).

We therefore reverse the granting of the summary-judgment motion in favor of Southridge and enter a judgment on behalf of Felleman in this controversy.

---

**2.** A "dropdead clause" requires a contract to be performed on or before a "dropdead date." The second purchase-and-sales agreement entered into between Eastern and the Riccis listed a dropdead date of July 1, 1987. That is, if the closing had not been completed on or before July 1, 1987, both the Riccis and Eastern had the option to walk away from the transaction.