James J. THOMPSON

v.

Doreen A. McCANN et al.

No. 99–288–Appeal.

Supreme Court of Rhode Island.

Nov. 6, 2000.

433

James F. Hyman, Newport, for Plaintiff.

Sean O. Coffey, Providence, Turner C. Scott, Newport, for Defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

A judgment for specific performance of a purchase and sale agreement (agreement) has caused the defendants, Doreen A. McCann (McCann) and Midwest Electric Corporation (Midwest) (collectively, sellers)[1] to prosecute this appeal. They contend that the Superior Court erred in (1) finding that they had breached the agreement, and (2) granting this remedy. Because the parties included a "time is of the essence" clause in the agreement, the sellers suggest that the trial justice should have strictly enforced the agreement's May 27, 1998, closing date against the plaintiff-buyer, James J. Thompson (Thompson or buyer) by voiding the contract when the parties failed to close on that date. Following a prebriefing conference, a justice of this Court directed the parties to show cause why the appeal should not be summarily decided. No

---

1. Doreen A. McCann wholly owned Midwest Electric Corporation, the holder of the liquor license for the commercial condominium that the plaintiff, James J. Thompson, agreed to purchase.

cause having been shown, we proceed to do so.

On April 21, 1998, buyer and sellers entered into an agreement in which Thompson contracted to buy sellers' commercial condominium unit (property) in the Bay View Condominium complex in Jamestown. The sellers had operated this property as a restaurant. The parties agreed that the closing for the sale would take place on May 27, 1998. Apparently, they believed that a May 27 closing date allowed sufficient time for the Jamestown Town Council to process and approve the transfer of sellers' liquor license to the buyer. Indeed, the agreement specified that "[t]he obligation of the Buyer to close this transaction and pay the Purchase Price as provided for herein shall be conditioned only upon (i) delivery by the Seller of clear and marketable title and (ii) approval by the Town Council of the Town of Jamestown sitting as the Licensing Board of the transfer of the Class BV liquor license to Buyer free and clear of all liens." The agreement also stated that "with respect to the performance of all obligations hereunder time is of the essence."

On April 26, 1998, the Jamestown Town Council met to consider the application to transfer sellers' liquor license for the restaurant condominium to buyer. Thompson had also applied to the council for a zoning change on the property from commercial to single-family residential. Because of the length of the April 26 meeting, the council did not address the application for a liquor-license transfer and referred the zoning change application to the town solicitor for review. It then rescheduled the liquor-license application for its consideration at the May 11, 1998, council meeting. By that time, however, the proposed liquor-license transfer had to be advertised for a period that would preclude a May 27 closing. Hence, the council, at its May 11, 1998, meeting, agreed to advertise the proposed transfer of the liquor license and then rule on the application at its meeting on June 8, 1998.

Even though McCann was upset about Thompson's attempt to obtain a zoning change at the same time as the council was considering the application for the liquor-license transfer, she nevertheless orally agreed to extend the closing date to June 9, 1998—at least according to her real estate agent. The agent in turn told Thompson that McCann had agreed to an extension. McCann, however, denied ever having told either her agent or Thompson that she would extend the closing date beyond May 27, 1998. As McCann testified, "[t]hey may have gotten the impression that [the closing date] didn't matter and they didn't need an extension, but I mean, I never told them that."

On May 26, 1998, McCann's agent faxed to her a proposed written agreement signed by Thompson to extend the closing date. The agent testified that McCann told her that she would sign the extension agreement but she was currently too busy to do so because she was moving furniture into her North Providence house. McCann, on the other hand, denied making any such statement, maintaining that all she told her agent was that she would have an attorney look over the proposed extension.

Although the agreement indicates that buyer and sellers would close on May 27, 1998, neither party appeared at the town hall on that date to do so. The failure of both parties to appear for the closing on the date and at the place specified in the agreement suggests that they understood that the closing would not occur then and there. In addition, by May 27 sellers had failed to provide the town council with the usual documentation that the council required before it would approve a proposed liquor-license transfer. In particular, they did not provide the council with a certificate of good standing from the Rhode Island Division of Taxation and they had not paid the restaurant's license fee for 1997. Also, sellers had failed to clear up a lien placed on the property by a liquor wholesaler. The council normally conditioned

its vote to approve a liquor-license transfer upon the council's prior receipt of any lien releases and other pertinent documentation showing satisfaction or release of past-due fees, taxes, and liens, including the above-specified items. In short, the evidence indicated that sellers were not ready, willing, and able to perform their part of the bargain by May 27 and that they had contributed by their actions or inactions to the parties' failure or inability to close on May 27.

On May 28, 1998, McCann spoke with the agent by phone, telling her that the faxed extension agreement had to include other provisions. She also wanted Thompson to deposit more money in consideration of any agreement on her part to the extension. The sellers, however, never executed this faxed written-extension agreement. Instead, on May 30, 1998, after considering and taking in the water view from her property, McCann said that she had changed her mind about the sale. She then asked her attorney, "if there was any way that I could get out of [the agreement] because I didn't want to sell [the condominium] anymore." Thereafter, on June 1, 1998, sellers sent buyer a letter stating that because Thompson had failed to close the transaction on May 27, the agreement was null and void. Although they expressed a willingness to return his $11,000 deposit, sellers also threatened to retain it if he sought to enforce the agreement.

After sellers notified buyer on June 1, 1998, that they considered the agreement null and void, they also asked the council to withdraw the pending applications for the liquor-license transfer and zoning change. In response, on June 1, buyer offered to close immediately, regardless of the council's lack of approval for the liquor-license transfer and the zoning-change application. The sellers refused, contending that the original agreement was now null and void and that buyer's offer on June 1, 1998, to close immediately simply constituted a new offer to enter into an agreement to buy the property, one that sellers were free to reject.

Thompson then filed this action and, on June 23, 1998, the Superior Court preliminarily enjoined sellers from selling or encumbering the property and the other assets covered by the agreement. After a nonjury trial, the court found in buyer's favor and ordered specific performance of the agreement. The trial justice ruled that the condition precedent involving the liquor-license transfer was "exclusively for the [sellers] to perform." Consequently, she found that buyer "was completely powerless to effectuate the license transfer * * * [and][i]t was not [his] fault that the closing could not occur on the contract date of May 27th." She further found that it was the "[sellers'] obligation to pursue the [liquor-license] transfer application at the June 8th hearing." The court concluded that by repudiating the contract on a "whim," sellers had breached the contract. Judgment entered in favor of buyer and sellers filed a timely notice of appeal.

On appeal, sellers argue that the agreement expired by its own express terms when they were unable to transfer the liquor license before the original closing date of May 27, 1998. They contend that the transfer of the liquor license on or before May 27 was a condition precedent to close the transaction and that the contract's "time is of the essence" provision supports their reading that the May 27, 1998, closing date was a firm deadline for performance of the agreement.

Thompson counters by arguing that sellers' own conduct precludes them from relying upon the parties' failure to close on May 27 as an excuse to void the agreement. He suggests that sellers either waived the May 27 closing date, or that they should be estopped from relying upon the "time is of the essence" clause with respect to the parties' failure to close the sale on May 27. He further contends that sellers deliberately misled him into believing that they would proceed with a closing within a reasonable time after May 27,

1998. He says they never gave him any indication that they would not go through with the sale until June 1, 1998. He also argues that the agreement is ambiguous because not only is "time of the essence" for all of the obligations in the agreement but also the contract specifies that buyer's obligation to close on May 27 was conditioned upon sellers' transfer of the liquor license, free and clear of all liens. He posits that sellers were responsible, at least in part, for failing to accomplish this transfer on or before May 27. Thompson also suggests that because the "time is of the essence" provision applied equally to sellers, their failure to provide the town council with the required documentation for the council to approve the license transfer on or before the May 27 closing date should preclude them from relying upon the lack of a closing on May 27 to nullify the contract.

The sellers respond by asserting that no waiver of the May 27 closing date occurred because McCann specifically refused to sign the faxed extension agreement. In addition they contend that estoppel is not appropriate because buyer did not act or fail to act in reliance on sellers' conduct. In any event, they argue that the statute of frauds prevents this Court from giving any effect to McCann's alleged oral statements about extending the closing date. Finally, sellers note that even assuming that buyer had the power to waive the liquor-license transfer as a condition precedent to the closing, his purported waiver on June 1 was not effective because it occurred after the May 27 closing deadline had already expired. The sellers also suggest that they were not required to appear at the town hall on May 27, 1998, because the unwaived liquor-license condition requiring transfer of the license could not be complied with on or before the scheduled closing. Thus, their appearance at town hall on May 27, they posit, would have been futile.

In short, sellers insist that McCann did nothing to waive the "time is of the es-

sence" clause in regards to the closing date. They point out that McCann's refusal to sign a closing-extension agreement on May 26, 1998, demonstrates that she did not waive the closing deadline of May 27, 1998. The sellers also argue that the agreement was clear and unambiguous. They state that the "time is of the essence" clause applied to all obligations of the parties under the agreement, including the obligation to close on May 27.

## Analysis

■ "The grant of a request for specific performance is not a matter of right but rests within the sound discretion of the trial justice." *Eastern Motor Inns, Inc. v. Ricci,* 565 A.2d 1265, 1269 (R.I.1989); *see also River Road Realty, Inc. v. Waskan,* 735 A.2d 221, 222 (R.I.1999) (mem.). "On appeal this court will not disturb a trial justice's ruling on a specific performance claim unless the appellant demonstrates an abuse of discretion or error of law on the part of the trial justice." *Eastern Motor Inns, Inc.,* 565 A.2d at 1269. But when a buyer has at all times been ready, willing, and able to perform his or her part of an agreement to transfer real estate, the buyer is entitled to specific performance of that contract in the absence of a legitimate and articulable equitable defense. *See Fitzgerald v. O'Connell,* 120 R.I. 240, 243, 386 A.2d 1384, 1386 (1978).

■ Although sellers insist that the transfer of the liquor license was a condition precedent to closing on May 27, 1998, and that the "time is of the essence" provision means that the agreement terminated when the parties failed to close on the May 27 closing date, a party may waive a condition precedent if the condition is for the benefit of the waiving party. *See Jones v. United States,* 96 U.S. 24, 28, 13 Ct.Cl. 524, 24 L.Ed. 644, 646 (1877). In *Safeway System, Inc. v. Manuel Bros., Inc.,* 102 R.I. 136, 140, 228 A.2d 851, 853–54 (1967), this Court held that the purchaser in an agreement to buy real property had effectively waived conditions precedent for the

purchaser's benefit by making reasonable attempts to arrange an alternate closing date. Because the purchaser's conduct had effectively waived the conditions precedent, the seller could no longer rely on the nonoccurrence of those conditions in refusing to comply with the agreement. *Id.* Here, as in *Safeway,* buyer's pre-May 27 conduct appears to have waived the condition precedent for obtaining the council's approval to transfer the sellers' liquor license to him on or before May 27. This condition was for the buyer's benefit. Thus, he could waive it without breaching the contract or excusing the sellers' obligations to perform. Moreover, during the life of the agreement, buyer signed a proposed agreement to extend the closing date beyond May 27, 1998, and faxed that signed agreement to sellers on May 26, 1998. The purchaser in *Safeway* had also proposed an extension of the closing date shortly before the scheduled closing date and this Court found that such an action evinced an intent on that buyer's part to waive this condition precedent for the original closing date. *Id.* at 138–39, 228 A.2d at 853; *accord Haxton's of Riverside, Inc. v. Windmill Realty, Inc.,* 488 A.2d 723, 725 (R.I.1985); *but compare Citrone v. SNJ Associates,* 682 A.2d 92, 96 (R.I.1996) (stating that proposed extension agreements for closing date did not constitute explicit waivers of conditions precedent to agreement). Finally, we hold that the buyer's filing of a suit for specific performance implicitly waived any conditions to the sale that were included in the contract for his benefit. *Yates v. Hill,* 761 A.2d 677 (R.I. 2000).

 Here, however, unlike *Safeway,* the agreement included a "time is of the essence" clause that was applicable to all the parties' obligations under the agreement, suggesting that the parties originally intended that the May 27, 1998, closing date would serve as a final deadline. But even "[a] provision making time of the essence may be waived either expressly or impliedly." *Alk v. Lanini,* 61 Or.App. 158, 656 P.2d 367, 369 (1982). And a seller of real estate may not rely on a "time is of the essence" provision if the seller was "responsible, at least in part, for the fact that the transaction did not close on schedule." *Id.*

 In this case it appears that sellers contributed to the parties' failure to close on May 27 by, among other things: (1) failing to procure and provide the council with the customary documentation it required to approve a liquor-license transfer, thereby disabling it from approving the transfer of the liquor license on or before May 27, and (2) entering into discussions with buyer and their own real estate agent that indicated sellers would be amenable to a post-May 27 continuance of the closing date. ·McCann admitted that she considered agreeing to such an extension, but she wanted buyer to agree to deposit more money and also to agree to other conditions in exchange for the requested extension. She stated that she expressed such concerns to her real estate agent on May 28, 1998. But sellers' conduct in communicating their potential willingness to allow an extension of the closing date, when coupled with their failure to provide the council with the requisite documentation it needed to approve the license transfer by May 27, led all concerned—even sellers' own real estate agent—to believe that the original closing date of May 27, 1998, was no longer "of the essence" and that the mere passing of this date without a closing would not serve to nullify the parties' agreement.[2]

---

2. We also note that some of the evidence at trial indicated that McCann went even further than merely negotiating over an extension date; indeed, according to her agent, she verbally agreed to an extension of the May 27 closing date. However, the trial justice did not expressly make any findings concerning whether she credited the agent's testimony on this point. Even so, McCann's discussing and negotiating for an extension of the May 27 closing date suggested that sellers no longer considered it a "drop dead" date, even if that had been the parties' original intention.

■ Thus, sellers' conduct weighed against the trial justice enforcing the "time is of the essence" provision vis-à-vis the May 27 closing date. It also appears to us that it would have been inequitable for the trial justice to conclude that the May 27 closing was a final deadline under the facts of this case. "Whether time is truly of the essence, and the extent to which that should influence the judge in deciding whether to relieve against a particular forfeiture, depends upon the nature of the subject matter, the purpose and object of the contract and all other relevant facts and circumstances, not upon the skill of the draftsmen." *Kaiman Realty, Inc. v. Carmichael*, 65 Haw. 637, 655 P.2d 872, 874 (1982) (quoting *Rothenberg v. Follman*, 19 Mich.App. 383, 172 N.W.2d 845, 851 (1969)). Here, the facts and equities of this situation militated against a strict application of the "time is of the essence" clause with regard to the May 27 date—especially when sellers contributed to the parties' inability to close on May 27 by failing to provide the council with the documentation it typically required before approving an application for a liquor-license transfer (namely, a certificate in good standing from the Rhode Island Division of Taxation and evidence that any liens on the property had been released).

■ Also, "[g]enerally, in contracts for the sale of land, payment or conveyance at the exact time specified in the [agreement] is not regarded as 'of the essence' because 'the injury caused by delay is little or nothing. Delays are frequent in these transactions; and it is the custom of [people] to overlook them, even though they may have stated in advance that they would not.'" *Kalinowski v. Yeh*, 9 Haw. App. 473, 847 P.2d 673, 677 (1993) (quoting 3A A. Corbin, *Corbin on Contracts* § 716 at 367 (1951)). Such a practical consideration provides further equitable support for the trial justice's decision not to enforce the "time is of the essence" clause with respect to the May 27 closing date.

■ The sellers' argument that the statute of frauds prohibits the introduction of parol evidence to vary the written contract also misses the mark. While it is true that the contract specifies that it may not be modified "except by a written instrument," as long as all the essential terms of a purchase and sale agreement are contained in a writing, alleged modifications and other terms may be supplied by parol evidence. *See Berube v. Montgomery*, 463 A.2d 158, 159–60 (R.I.1983); *see also Greensleeves, Inc. v. Smiley*, 694 A.2d 714, 716–17 (R.I.1997) (per curiam). Here, the post-agreement conduct and statements of the parties indicated that, despite the "time is of the essence" clause, the May 27, 1998, closing date would not be treated as a strict deadline under the agreement.

The sellers also rely upon *Citrone v. SNJ Associates*, 682 A.2d 92 (R.I.1996), in support of their assertion that McCann's refusal to sign the faxed written extension agreement demonstrated that she did not waive the contract's specification of a May 27 closing date. In *Citrone*, the purchaser sent to the seller several agreements to extend the closing date. *Id.* at 93–94. The seller did not sign any of the extension agreements, and this Court ruled that the agreement had lapsed once the original closing date had passed. *Id.* at 97. However, the seller in *Citrone* did not engage in conduct that contributed to the parties' inability to close on the date originally agreed upon, nor did the seller in *Citrone* do anything to mislead the purchaser into believing that the closing date would be extended without nullifying the contract. In *Armstrong, Gibbons v. Southridge Investment Associates*, 589 A.2d 836, 839 (R.I.1991), this Court noted that the dilatory tactics of one party to the agreement could be a dispositive factor in deciding whether to apply the closing date as an absolute final deadline. In that case, we refused to condone the forfeiture of a deposit upon the trivial occurrence of one party's delay in mailing written notice of cancellation of the agreement, when oral

notice had already been provided. *Id.* Similarly, the delay in this case would appear to be relatively "trivial," as buyer informed sellers that he was ready to close on June 1, 1998, despite knowing that the council was not scheduled to consider approval of the liquor-license transfer until its June 8, 1998 meeting.

 Under a purchase and sale agreement, the purchaser becomes the equitable owner of the real estate and the seller holds legal title as a security interest. *See Dulgarian v. City of Providence,* 507 A.2d 448, 451 (R.I.1986). The trial justice found that in deciding on May 30, 1998, not to consummate the agreement, McCann had changed her mind on a "whim." Because the sellers' conduct contributed to the parties' inability to close on May 27, 1998, the buyer still had a reasonable time thereafter to close on the agreement. *Cf. Ridge Chevrolet–Oldsmobile, Inc. v. Scarano,* 238 N.J.Super. 149, 569 A.2d 296, 300 (App.1990) (stating that ordinarily when no time limit is set for performance, a party has a reasonable time to perform); *see also Safeway System, Inc.,* 102 R.I. at 146, 228 A.2d at 856–57 (explaining that in the absence of an enforceable "time is of the essence" provision, a party has a reasonable time to perform). Therefore, we conclude that McCann's nullification letter of June 1, 1998, was invalid. As the parties were focusing on the June 8 date to obtain the council's approval for the transfer of the liquor license, a closing could have taken place on June 9, just after the council's meeting to approve the license transfer. Such a delay would have been only a little over a week from the original May 27 date and would not have been unduly burdensome to either the buyer or sellers—especially when the record supports the conclusion that the sellers waived enforcement of the May 27 date as a final deadline and were estopped by their conduct from relying upon Thompson's failure to close on May 27 as an excuse to void the contract. Indeed, given the facts of this case, the sellers' position borders on the frivolous. Thus, we cannot fault the trial justice's evaluation of the equities surrounding this situation.

## Conclusion

For these reasons, we conclude that the trial justice did not err in ordering specific performance of the purchase and sale agreement. Hence, we deny the sellers' appeal and affirm the judgment.