Thomas P. GILL et al.

v.

Thomas R. WAGNER et al.

No. 2001–447–Appeal.

Supreme Court of Rhode Island.

Dec. 23, 2002.

David P. Martland/Robert M. Silva, Middletown, for Plaintiff.

Peter M. Cosel, Newport, for Defendant.

Before WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

A seller of real estate was unable to convey a "good, clean, and marketable" title by the closing date specified in the written purchase and sale agreement. He allegedly agreed, however, to defer the closing to an unspecified date in the next year while he attempted to cure the title problem, but then reneged and purported to terminate the agreement. Under these circumstances, can the buyers place and maintain a *lis pendens* on the property while they seek specific performance of the parties' purchase and sale agreement? For the reasons listed below, we answer this question in the affirmative.

### Facts and Travel

The plaintiffs, Thomas P. Gill and Christine A. Gill, M.D. (buyers), appeal from a Superior Court order granting the motion of defendant Thomas R. Wagner (seller), to quash and remove the buyers' notice of *lis pendens* from the land-evidence records.[1] A single justice of this Court ordered the parties to show cause why the issues raised in this appeal should not be decided summarily. Because they have not done so, we proceed to decide the appeal at this time.

This case involves a dispute over an agreement to sell commercial real estate on Valley Road in Middletown. In August 1999, buyers and seller entered into a purchase and sale agreement concerning property. The buyers alleged that seller at all times held himself out as the only

rightful owner of the property. The sale of the property, however, never came to fruition as agreed because, according to buyers, the estate of seller's deceased former partner, Glen C. Lord (Lord), claimed an interest in the property and did not authorize seller to enter into the purchase and sale agreement.

Previously, Lord and seller had entered into a partnership, known as GT Associates, whose principal business was owning and managing the subject property. The seller alleged that before he signed the purchase and sale agreement, he notified buyers that, even though Lord had died, Lord's daughter still claimed an interest in the property. Nevertheless, seller represented in the purchase and sale agreement that he was authorized to transfer the property and that he would convey a "good, clean, and marketable title" by warranty deed at the scheduled closing on September 30, 1999. But that date came and went without any closing. Nevertheless, seller retained buyers' deposit while the parties or their lawyers continued to communicate with one another about resolving the title problem and then closing on the sale of the property at a later date.

For example, toward the end of November 1999, buyers notified seller that his authority to transfer title to the property was in question because the Lord estate still claimed an interest in the property. According to buyers, the seller agreed to defer the closing to an unspecified date in 2000 while he attempted to clear up the title problem by resolving his dispute with Lord's estate. Eventually, however, seller denied that there was a defect in the title and buyers refused to close on the property until seller resolved the dispute with Lord's estate. The buyers requested that

---

1. Such an order is appealable. *See, e.g., Zito v. East Side Associates,* 119 R.I. 629, 630, 381 A.2d 1364, 1365 (1978).

seller either obtain a release from Lord's estate or else submit the dispute between seller and the estate to arbitration.[2] The buyers also offered to place the net proceeds of the sale in escrow pending the outcome of the arbitration proceeding. The seller, however, not only rejected this proposal but ultimately, on May 8, 2000, he returned buyers' deposit and said that he was terminating the agreement.

On October 3, 2000, buyers filed a complaint in the Superior Court against seller and GT Associates, alleging misrepresentation, deceit, and breach of contract. In addition to money damages, buyers also sought specific performance. In their complaint, they alleged that, pursuant to the purchase and sale agreement, seller had warranted and represented that he had full right and authority to sell the property. They asserted that seller's representations constituted deceit and breach of contract because he knew that, given the Lord estate's claims, he would be unable to do so by the originally agreed-upon closing date of September 30, 1999. Simultaneously with the filing of this complaint, buyers also filed a notice of *lis pendens* in the Middletown land records.

Eventually, seller moved for summary judgment and to quash and remove the notice of *lis pendens*. Although he denied seller's summary judgment motion, the motion justice granted seller's motion to quash and remove the *lis pendens*. He reasoned that the *lis pendens* would serve no purpose in this case because buyers' only remedy at the time of the alleged breach was one for damages, not for specific performance, because buyers had alleged that seller was unable to convey a clear title as of the original closing date specified in the agreement and that they were unwilling to take title to the property because of the cloud on the title caused by the pendency of the Lord estate's claim.

## Analysis

On appeal, buyers argue that the motion justice erred as a matter of law in granting seller's motion to quash the *lis pendens*. They maintain that, pursuant to the purchase and sale agreement, they had the right to seek specific performance if seller defaulted. They further argue that, once seller breached the agreement by representing that he had "the full right and authority to sell the [p]remises"[3]—when, in fact, his former partner's estate still claimed an interest—they were entitled to seek specific performance and to compel seller to do whatever was reasonably possible to enable him to convey a clear title. They also assert that the trial justice's decision deprived them of the opportunity to obtain specific performance because it foreclosed this remedy as a potential disposition of this case. Finally, they contend, in denying seller's motion for sum-

---

**2.** The seller and Lord's estate did, in fact, proceed to arbitrate their dispute, resulting in a favorable award to seller on October 6, 2000. The arbitrator concluded that the transfer of the real estate from the partnership to seller was not a fraudulent transfer; rather, it was an appropriate method to wind-up the partnership's affairs, thereby apparently resolving the title problem.

**3.** Paragraph five of the purchase and sale agreement provided, in pertinent part, as follows:

"5. *SELLER'S REPRESENTATIONS.* Seller represents and warrants to Purchaser as follows as of the date hereof and as of the Closing Date:

A. Seller has full right and authority to sell the Premises to Purchaser as contemplated hereby without the consent or joinder of any other person or the approval of any court, including without limitation all requisite capacity, power and authority to enter into this Agreement and any and all documents pertaining to the consummation of the transactions contemplated herein."

mary judgment, the court suggested that buyers possessed a colorable claim to the property under the purchase and sale agreement, as it was allegedly modified by the parties when they agreed to defer the closing. They rely on *George v. Oakhurst Realty, Inc.*, 414 A.2d 471 (R.I.1980) (*Oakhurst Realty*) in support of their contention that the motion justice erred in removing the *lis pendens*.

The seller disputes buyers' assertions and maintains that the notice of *lis pendens* was not proper because buyers' remedies were limited to those set forth in the purchase and sale agreement.[4] The seller also insists that buyers' reliance on *Oak-hurst Realty* was misplaced because, unlike buyers in this case, the *Oakhurst* purchasers stood ready, willing, and able to purchase seller's property. Here, according to seller, buyers were unwilling to consummate the agreement on the specified closing date because of an alleged defect in the title.

■ Contrary to seller's assertion, however, buyers' reliance on *Oakhurst Realty* is not misplaced. In that case, the buyers filed a notice of *lis pendens* in conjunction with their complaint against the seller in which they sought specific performance of an agreement whereby for $4,000 the sell-

---

4. Paragraph six of the purchase and sale agreement provided, in pertinent part, as follows:

> "If the Purchaser [within the thirty-day title-examination period] finds any objection or defects in title, the Purchaser shall give notice in writing to the Seller, in which notice shall be stated in detail such objections or defects and the Seller shall have a reasonable time, not to exceed fifteen (15) days, within which to remove any such objections or defects. In the event the Seller is unable, after exercising a prompt, timely and diligent effort to remove any such objections or defects, to convey the Premises, as herein agreed to be conveyed, within fifteen (15) days from the date of receipt of the notice, the Purchaser may reject the title and all obligations of the parties hereto shall cease. However, the Purchaser may waive any title defect and the acceptance of the deed by the Purchaser shall be deemed to be full performance and discharge hereof."

In this case, buyers did not provide written notice to seller of any alleged title defects pursuant to paragraph six of the agreement. But the agreement did not provide that this was their sole and exclusive remedy for any objections to defects in the title. Thus, buyers chose neither to reject the defective title and terminate the contract nor to waive any defects and accept the deed with whatever title defects may have existed. Rather, they requested seller to attempt to cure whatever title problems existed as a result of the claim of his former partner's estate. According to buyers, seller assured them that he would "take care of the situation" and agreed to defer the closing while he did so, as reflected in his attorney's letter dated December 29, 1999, which he sent to buyers almost three months after the passing of the September 30, 1999, closing date specified in the purchase and sale agreement. In that letter, seller's lawyer stated that: "After speaking with my client [seller] who has now been in touch with the [buyers], it is my understanding that the parties desire to go forward with the transfer sometime after the new year once the title matters have been resolved." Thus, given seller's conduct in not holding buyers to the original closing date or to the remedies specified in paragraph six of the agreement, the above-quoted language in the agreement did not prevent buyers from requesting seller to cure the title problems, nor did it bar seller from agreeing to do so. Here, although they failed to do so within the thirty-day title-examination period specified in the agreement, buyers eventually notified seller of the alleged defect in the title caused by the pendency of the Lord estate's claim and requested seller to remove any such defect. Although seller was unable to do so within fifteen days after receiving notice, he eventually obtained a favorable arbitration award that enabled him to convey the property to buyers free of any claims of Lord's estate. Under these circumstances, a factfinder could conclude that the parties modified the purchase and sale agreement to conform to their conduct in deferring the closing date while seller attempted to cure the title problem.

er was to convey to the buyers a lot in Johnston. The seller later refused to convey the property to them and instead attempted to transfer it to a third party. *Oakhurst Realty,* 414 A.2d at 472. The Superior Court granted the third party's motion to remove the *lis pendens* and the buyers appealed. *Id.* On appeal, this Court held that the motion justice had erred in granting the third party's motion to quash and remove the *lis pendens, id.* at 474, noting that "[i]t is well established that an executory purchase-and-sale agreement vests in the vendee thereof equitable title to the land involved." *Id.* at 473. Thus, based upon the buyers' allegation in their complaint, the Court in *Oakhurst* concluded that the buyers' equitable interest in the property entitled them to put the world on notice (via a *lis pendens*) of their pending lawsuit in which they claimed title to the disputed property. *Id.* at 473–74. Furthermore, the Court reasoned, a *lis pendens* is not a lien or an attachment on the property, "but merely puts all prospective purchasers on notice that there is a suit pending involving an issue of title to the real property." *Id.* at 474.

In this case, as in *Oakhurst Realty,* the buyers' complaint alleged that, as a result of the purchase and sale agreement, they possessed an interest in the title to the disputed property. In filing the *lis pendens,* the buyers sought to put the world on notice that a suit was pending in which they claimed title to the property in question. Clearly, buyers' complaint and the evidence they produced in connection with the summary-judgment motion raised a genuine dispute about the title—as evidenced by the motion justice's denial of seller's motion for summary judgment. They alleged that seller had breached the purchase and sale agreement because he was unable to convey a marketable title when he agreed to do so; and that, after

agreeing to extend the closing date while he attempted to cure the title problem, seller changed his mind and ultimately announced that he was terminating the agreement. Thus, this was not a situation in which the complaint failed to raise a genuine dispute about the title. *Cf. Cortellesso v. Zanni,* 694 A.2d 751, 752 (R.I. 1997) (mem.) (when complaint does not raise a genuine dispute about the title, notice of *lis pendens* is not appropriate).

■ Contrary to the motion justice's reasoning in this case, buyers were not seeking specific performance of an agreement to convey property for which seller was unable to convey a good title. Rather, they were merely alleging—contrary to seller's representations and warranties in the purchase and sale agreement—that a cloud on the title existed and that seller had agreed to take reasonable steps to clear up this title problem before conveying the property to buyers. In these circumstances, buyers were entitled to sue for specific performance because, under the facts alleged in the pleadings, they were ready, willing, and able to perform their part of the purchase and sale agreement while seller was seeking to repudiate his obligations. *Griffin v. Zapata,* 570 A.2d 659, 662 (R.I.1990) ("It is well established that the party who wishes to avail himself of the unique remedy of specific performance must show that he was ready, able and willing to perform his part of the contract.") (quoting *Jakober v. E.M. Loew's Capitol Theatre, Inc.,* 107 R.I. 104, 114, 265 A.2d 429, 435 (1970)). When, by letter dated May 8, 2000, seller said that he was going to "terminate our sales agreement," and that he had "decided not to allow the pending arbitration with the Lord estate * * * interact with any other business dealings," buyers contend that his actions breached his previous agreement to defer the closing while he proceeded to

clear up the title problems. If buyers can show that seller's conduct in May 2000, breached the purchase and sale agreement (as modified), then they would be entitled to pursue "any and all remedies" in response to seller's breach, "including but not limited to specific performance."[5] In these circumstances, buyers properly filed the notice of *lis pendens* to protect their interest in the property. Therefore, the motion justice erred in removing that notice from the land-evidence records.

■ In addition, this Court has stated that, as a general rule "a party seeking specific performance of a real estate contract must show, *inter alia,* that the seller's title to the property was marketable at the time set for closing." *King v. Knibb,* 447 A.2d 1143, 1145 (R.I.1982). Other requisites for a specific-performance action include: "the existence of a valid underlying contract," and "that the vendee tender the purchase price to the vendor at the [closing date]." 14 Richard R. Powell, *Powell on Real Property,* § 81.04[1][b] at 81–174–75 (2001).

Here, a valid contract in the form of a written purchase and sale agreement existed, thereby satisfying the statute of frauds. Also, buyers did not need to show that seller's title was marketable as of the original closing date because they alleged that seller agreed to defer the closing while he attempted to clear the title. The "Time for Performance" section of the purchase and sale agreement specified the closing date as "September 30, 1999, *or at a different time and/or place as may be mutually agreed upon by the parties hereto.*" (Emphasis added.) As shown by the December 29, 1999, letter from seller's attorney, at least some evidence suggested

that the parties had agreed to defer the closing until sometime in 2000 (according to the seller's attorney, it was his understanding that "the parties desire to go forward with the transfer sometime after the new year"). Moreover, there was no "time is of the essence" clause in this purchase and sale agreement. *Safeway System, Inc. v. Manuel Bros., Inc.,* 102 R.I. 136, 145–46, 228 A.2d 851, 856–57 (1967) (explaining that a party has a reasonable time to perform under such an agreement, absent a "time is of the essence" provision). Thus, some evidence suggested that the parties agreed to defer the closing date until later in the year 2000 while seller attempted to clear the title. If so, buyers would not need to show that seller's title was marketable as of the original closing date. In addition, having offered to escrow the purchase price pending the outcome of seller's title-clearance efforts, buyers did not have to tender the purchase price before they sued for specific performance. Thus, buyers were entitled to sue for specific performance and they properly filed the notice of *lis pendens* to protect their interest in the property during the litigation.

■ Lastly, this Court has held previously that alleged oral modifications to written agreements to convey real estate can be enforceable. In *Thompson v. McCann,* 762 A.2d 432, 434, 438 (R.I.2000), for example, the seller argued on appeal that the statute of frauds prohibited any oral modifications after the seller allegedly agreed to an oral extension of the written closing date in the contract because of his inability to obtain approval for a liquor-license transfer to the buyer. Thereafter, the seller refused to sign the extension

---

**5.** Paragraph eighteen of the purchase and sale agreement provides, in pertinent part: "If the Seller shall default in the performance of this Agreement, all deposits, if any, shall be promptly returned to Purchaser, and Purchaser may pursue any and all remedies available to it at law or equity, including but not limited to specific performance."

agreement and sent the buyers a letter terminating the agreement. *Id.* at 435. This Court ruled that the parties' statements and post-agreement conduct indicated that, despite the "time is of the essence" clause, the closing date would not be treated as a strict deadline under the agreement. *Id.* at 438. "While it is true that the contract specifies that it may not be modified 'except by a written instrument,' as long as all the essential terms of a purchase and sale agreement are contained in a writing, alleged modifications and other terms may be supplied by parol evidence." *Id.* In *Berube v. Montgomery,* 463 A.2d 158, 158–59 (R.I.1983), the seller, as provided for in a written agreement for the sale of real estate, failed to provide evidence of water table and percolation tests and then attempted to terminate the contract before proceeding to a verbally modified closing date. The Court explained that "there are some portions of an agreement subject to the statute of frauds which may be so essential to the heart of the transaction as to be not susceptible to modification by parol.  * * * [But] an extension of the time of performance is not such a provision"—especially when the seller caused the delay and the buyer was ready, willing, and able to close the transaction. *Id.* at 160–61. Thus, in the case at bar, the conduct of the seller and the buyers could be construed to modify the original written closing date to one in which the closing would occur sometime in 2000 within a reasonable period after the seller resolved the title problem.

For these reasons, we sustain the buyers' appeal, vacate the order removing the *lis pendens,* and remand this case to the Superior Court for further proceedings consistent with this opinion.