**Charles L. GRIFFIN et al.**

v.

**George R. ZAPATA.**

**No. 88–189–Appeal.**

Supreme Court of Rhode Island.

Feb. 26, 1990.

Peter Mathieu, Anthony J. Gianfrancesco, Dennis J. Baluch, Baluch, Mahoney & Gianfrancesco, Providence, for plaintiffs.

Richard R. Daley, Providence, for defendant.

OPINION

MURRAY, Justice.

This case is before the court on the appeal of the defendant, George R. Zapata (seller), from a Superior Court order granting judgment for specific performance in favor of the plaintiff Charles Griffin (buyer) and judgment in the amount of $5,040 plus interest and costs to plaintiff Village Real Estate, Inc. (Village Realty). The seller alleges as error on the record the trial justice's order granting specific performance to the buyer. The seller asserts that this was error because the seller's conduct did not constitute anticipatory repudiation of the agreement; the buyer was not ready, willing, and able to perform under the contract; and the buyer failed to show that the seller could deliver marketable title. The seller further faults the trial justice's award of a broker's commission to Village Realty. Accordingly we advert to a brief precis of the factual situation in order to discuss these issues in depth.

On September 24, 1986, plaintiffs, the buyer and Village Realty, filed a complaint in Providence County Superior Court seeking specific performance of a purchase and sales agreement and a commission fee of 6 percent of the sale price, or $5,040. A trial was held in Providence County Superior Court on October 16, 1987.

The seller retained Gertrude Dickinson of Village Realty to sell his property located in Burrillville, Rhode Island. The buyer learned of the seller's property through agent Cathy Cooper at Village Realty.

On June 5, 1986, the parties entered into a purchase and sales agreement for the sale of the seller's property. The agreement provided that Village Realty was to receive a commission fee of 6 percent of the purchase price or $5,040. Further the agreement set a closing date for August 29, 1986. Dickinson testified at trial that she went over the terms of the contract with the seller "word for word." As the closing date neared, she kept telling the seller that he would have to be out of his house by the closing date.

The seller testified that during the period between the signing of the purchase and sales agreement and the closing date, his arrangements for housing fell through and he had no place to move. Also during this period the bank set August 19, 1986, as the closing date and notified Cooper at Village Realty. Cooper notified Dickinson. When Dickinson notified seller of the new closing date, he told her that he had no place to which to move. Dickinson offered seller assistance in finding housing, but she did not request an extension on the closing date from the bank.

The seller was represented by an attorney. The attorney for the mortgage company who was hired to do a title search of the property testified that he had a conversation with the seller's attorney and Dickinson and learned that the seller was not planning to attend the August 19, 1986 closing. On August 19, 1986, only the buyer, the attorney for the mortgage company, and Cooper appeared for the closing.

Thereafter, the mortgage company's attorney sent a letter threatening legal action "unless specific arrangements [were] made for a closing of this transaction on or before August 29, 1986," to the seller and to the seller's attorney.

At the close of the case the trial justice rendered a bench decision, finding that the purchase and sales agreement was valid and binding. He further found that there was evidence of a unilaterally scheduled closing date of August 19, 1986, and that the buyer was ready, willing, and able to perform his obligations on August 19, 1986, or August 29, 1986. He found that the seller's conduct through his attorney created a "full, complete and unequivocal anticipatory repudiation of the entire agreement" and that no evidence existed indicating that the seller would have performed on August 29, 1986. Also the trial justice found that the listing agreement with Village Realty was valid and enforceable and that Village Realty fulfilled its part of the bargain and is therefore entitled to the commission fee.

On November 13, 1987, the trial justice entered an order granting specific perform-ance for the buyer and Village Realty. The trial justice also ordered the buyer to deposit $84,000 into the court registry within sixty days.

The seller asserts that the trial justice erred in finding that the seller's conduct constituted an anticipatory repudiation of the contract and in finding that the buyer was ready, able, and willing to perform under the contract. Also the seller alleges that the trial justice erred in granting specific performance of the June 5, 1986 purchase and sales agreement because the buyer failed to show that the seller could deliver a marketable title. In addition, seller claims, the buyer waived his right to specific performance by not complying with the court's order. The seller also faults the trial justice's grant of a broker's commission to Village Realty.

We have held that "[t]he grant of [specific performance] is not a matter of right, but rests in the sound discretion of the trial justice." *Jakober v. E.M. Loew's Capitol Theatre, Inc.*, 107 R.I. 104, 114, 265 A.2d 429, 435 (1970). Also,

> "[w]here parties have submitted a controversy to a trial justice sitting without a jury, the findings of fact made by him are entitled to great weight and will not be disturbed on appeal unless it can be shown that such findings are clearly wrong or that the trial justice misconceived or overlooked material evidence." *Gaglione v. Cardi*, 120 R.I. 534, 539–40, 388 A.2d 361, 364 (1978).

In deciding whether to grant specific performance, the trial justice found that a valid, binding, and enforceable contract between the seller and the buyer was formed and that the buyer was ready, able, and willing to perform on or about both August 19 and August 29, 1986. The trial justice further found that the seller's conduct through his attorney around or near August 19, 1986, constituted a full, complete, and unequivocal anticipatory repudiation of the entire agreement.

■ Specific performance is an equitable remedy. The granting of specific perform-ance is appropriate when adequate compen-

sation cannot be achieved through money damages as where the item is unique and distinctive, such as land. "It is well established that the party who wishes to avail himself of the unique remedy of specific performance must show that he was ready, able and willing to perform his part of the contract." *Jakober*, 107 R.I. at 114, 265 A.2d at 435. The record before us indicates that the buyer was ready, willing, and able to perform from August 19 through August 29, 1986. The buyer testified that he was present at the August 19, 1986 closing with the requisite checks and that he was ready to perform his part of the contract on August 19, 1986. Also, the attorney for the mortgage company's August 26, 1986 letter to the seller, and to the seller's attorney, which warned that legal action would be taken if the closing was not performed on or before August 29, 1986, indicates the buyer's further willingness to perform on or about August 29, 1986.

■ The seller asserts that his conduct did not indicate an anticipatory breach. "[I]n order to give rise to an anticipatory breach of contract, the defendant's refusal to perform must have been positive and unconditional." *Thompson v. Thompson*, 495 A.2d 678, 682 (R.I.1985) (quoting 11 Williston, *Contracts* § 1322 at 130 (3d ed. Jaeger 1968)). Further "a repudiation can be evidenced by either a statement to that effect or 'a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach.' " *Thompson*, 495 A.2d at 682 (quoting 2 Restatement (Second) *Contracts* § 250(b) at 272 (1981)).

The record indicates that the seller's words and actions on or about the scheduled closing constituted an anticipatory repudiation of the purchase and sales agreement. The seller testified that he was not going to be present at the August 19, 1986 closing because he had not secured alternate housing at that time. Dickinson testified that seller's attorney told her there would be no closing because the seller would not be present. Further, neither the seller nor his attorney gave any indication

that the seller would be willing to close on or about August 29, 1986, either. The seller did not make an effort to perform on August 29, 1986, or at least to extend the August 19, 1986 closing date. These actions and statements indicate a clear anticipatory repudiation of the purchase and sales agreement. Therefore, after our review of the record, we find that the trial justice was correct in finding an anticipatory repudiation by the seller. The seller did not intend to perform his part of the agreement on August 19, 1986, or on August 29, 1986, or within any reasonable time after August 29, 1986.

■ The seller's assertion that since no evidence was presented to show that title to the property was marketable, specific performance is not warranted is without merit. We have stated that "a party seeking specific performance of a real estate contract must show * * * that the seller's title to the property was marketable at the time set for closing." *King v. Knibb*, 447 A.2d 1143, 1145 (R.I.1982) (citing 6A *Powell on Real Property*, ¶ 925[2] at 84–10 (Rev. ed.1981)). There is no evidence in the record that would indicate that the seller's title to the property was not marketable. The mortgage company's attorney testified that he searched the title. Further, the buyer testified that he secured financing from the mortgage company. Any defects in the title that would render the title unmarketable would have been discovered by the mortgage company's attorney. Presumably the mortgage company would not have extended financing to the buyer if the title to the property were unmarketable. Therefore, the record indicates that the seller's title to the property was marketable and the trial justice's grant of specific performance to the buyer was proper.

■ The seller next alleges that the buyer waived his right to specific performance by not complying with the court's order to deposit the purchase price of the property in the court registry within sixty days unless the parties agreed otherwise. In *Safeway System, Inc. v. Manuel Bros., Inc.*, 102 R.I. 136, 228 A.2d 851 (1967), we considered whether a five-day delay in ac-

quiring the funds necessary to close warranted denial of specific performance. We concluded that the parties did not intend that the fixed time for performance was material or an essential part of the agreement. Also no evidence existed that the buyer was acting in bad faith or that the delay was an abandonment of the contract. Likewise, in the pending matter there is no evidence that the buyer was acting in bad faith or attempting to abandon the contract by requesting an additional sixty days to perform. The record indicates that the buyer remained ready, able, and willing to perform his part of the purchase and sales agreement on or about August 19, 1986, and on or about August 29, 1986. It is not unreasonable to allow additional time to secure financing for the property subsequent to the trial justice's November 13, 1987 order granting the buyer specific performance. There is no evidence in the record that would indicate that a sixty-day delay in closing would be prejudicial or disadvantageous to the seller. In fact, since the seller was having difficulty finding alternative housing, a delay in the closing date would have been to the seller's benefit.

■ The seller also faults the trial justice's granting Village Realty a broker's commission. He claims that Village Realty did not adequately represent his interests since its agents failed to reschedule a closing to accommodate his needs.

A broker is entitled to a commission when he or she is the inducing cause in bringing about a sale.

"A broker is the effective agent, or the procuring cause, when he is the first broker to interest the prospective purchaser in the property, when he causes such purchaser to inspect or view the property, and when he conducts negotiations concerning a sale thereof with the prospective purchaser. * * * A broker has sufficiently performed and is entitled to compensation when he or she has produced a prospective purchaser who is ready, willing, and able to purchase at the price and terms òf the seller." *Rustigian v. Celona,* 478 A.2d 187, 190 (R.I.

1984) (citing *Gettler v. Caffier,* 92 R.I. 19, 22, 165 A.2d 730, 732 (1960) and *Judd Realty, Inc. v. Tedesco,* 400 A.2d 952, 955 (R.I.1979)).

The buyer testified that he learned of the seller's property through Village Realty and that Village Realty's agents organized the negotiations between the buyer and the seller. As we have held above, the buyer was a ready, willing, and able purchaser of the seller's property. Village Realty's agents produced the buyer to the seller, and therefore have performed their part under the contract and are entitled to the broker's commission of $5,040 plus interest and costs. Hence the trial justice was correct in awarding Village Realty a broker's commission.

Upon a review of the issues raised by the seller on appeal and our analysis thereof, we conclude that in the instant case the issues are without merit. Hence the seller's appeal is denied and dismissed. The judgment of the Superior Court is affirmed. The buyer is given sixty days to make a deposit in the registry of the court in compliance with the trial justice's November 13, 1987 order. The papers are remanded to the Superior Court for appropriate action consistent with this opinion.