[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This matter is before the court for decision from a non-jury trial held on January 14 and 15, 1991. Plaintiffs William and Laurie Gross seek specific performance of a contract to sell certain real estate owned by defendants Louis and Jane LeDoux. The defendants counterclaim for slander of title and quantum meruit.
On August 22, 1985, the parties entered into a purchase and sale agreement (PS) whereby the defendant Mr. LeDoux agreed to construct and sell to plaintiffs a raised ranch home at 101 Ledger Lane in the town of Tiverton, Rhode Island. The specifications for construction were provided in a building agreement which was an addendum to the PS. The purchase price, as reflected in the PS, was $86,131. This contract was subject to RIHMFC financing. The PS provided that . . . "(t)his instrument sets forth the entire contract between the parties and no alteration or amendment shall be valid unless in writing signed by all parties." Moreover, the building agreement which was an addendum to the PS provided that "(a)ny item, provision or agreement . . . not covered by the specifications will be subject to the provision that any changes, alterations or additions . . . are to be provided for by a separate agreement and signed by all parties hereto". Upon signing the PS, the plaintiffs left a deposit of $8,600. which Mr. Ledoux has held throughout the pendency of this litigation. A closing was scheduled for January 8, 1986.
Sometime in the fall of 1985, Mr. LeDoux incurred what he estimated to be $3,506.42 in additional costs installing various extras at 101 Ledger Lane that were not provided for in the agreement. (These included a double vanity instead of a single, a deeper foundation and the costs associated with it, and other miscellaneous items.) Mr. LeDoux sought direct payment from the Grosses for these costs. Alternatively, he offered to postpone the closing to allow plaintiffs to obtain alternate financing, since this $3,506.42 would put them over the RIHMFC ceiling. Plaintiffs refused to pay the additional cost, claiming that they never instructed Mr. LeDoux to deviate from the original agreement. Mr. LeDoux, claiming that he installed the extras at the plaintiff's request, refused to close on January 8, 1986. Plaintiffs now seek specific performance of the August 22, 1985 PS, and damages.
The issue presented for this court's consideration is whether the acts of Mr. Ledoux, his installing of the extras during construction of the house, and his subsequent refusal to proceed to closing without reimbursement constituted a breach of the agreement between the parties as set forth in the August 22, 1985 PS, and the addendum attached thereto.
As previously noted, the PS provided that all modifications to the agreement be made in writing signed by the parties. The building agreement similarly required that any changes in building specifications be agreed to in writing. Upon review of the evidence presented at trial, this court finds that neither the PS nor the building agreement were amended by Mr. LeDoux or the plaintiffs relative to the "extras". No documents were presented at trial which would allow the court to find that any modification took place as provided for in the PS agreement and the building agreement.
The court finds the plaintiff's witnesses at trial to be more credible than those of the defendants. The evidence presented did not persuade this court that verbal agreements existed as to "extras" or that there was a meeting of the minds in that regard contrary to the stated intent of the parties in the binding written agreement. Thus, the court finds that the Grosses were under no obligation to pay for the "extras". The court further concludes that Mr. LeDoux failed to honor the agreement by making modifications that were not in writing as was required by the PS. The plaintiffs having abided by the agreement, had the right to proceed to closing in January of 1986. Therefore, the court finds that Mr. LeDoux breached the agreement. As such, the court finds the defendants' counterclaims to be without merit.
Having found that the defendants did in fact breach the agreement, this court must now decide what remedy is appropriate to be awarded the plaintiffs.
Mr. and Mrs. Gross seek a grant of specific performance of the agreement, thus allowing them to purchase the 101 Ledger Lane home site for the contract price of $86,131, subject to adjustment for rents and taxes. Specific performance is not a matter of right but rests entirely upon the sound discretion of the trial justice. Griffin v. Zapata, 570 A.2d 659 (R.I. 1990) at 661. It is an equitable remedy. The granting of specific performance is appropriate when adequate compensation cannot be achieved through money damages as where the item is unique and distinctive, such as land. Id. at 661-662. In the present case, the plaintiffs intended to use the 101 Ledger Lane as their home. The plaintiffs have since purchased another home where they now live. The plaintiffs have testified that they have no present plans to move to 101 Ledger Lane. As such, the property in question has ceased to be unique as a primary residence for plaintiff which was its original intended use.
Thus, the court concludes that a compelling need for the specific enforcement of this agreement does not now exist. Accordingly, the plaintiffs' request for a grant of specific performance is denied. Rather, this court deems that money damages for breach of contract is the appropriate remedy. In this particular action the court believes the appropriate measure would be to give to plaintiffs the benefit of their bargain. The court has determined that the property in question at the time of the scheduled closing was worth considerably more than the PS price. The plaintiffs are entitled to the benefit of their bargain. This would be the difference between the contract price of $86,131, and the fair market value of the property at the time of the scheduled closing. Therese Holland, an expert witness on the subject of residential real estate in the Tiverton area, opined that the fair market value of the property in January, 1986 was $100,000.00. This court accepts Ms. Holland's expert determination and accordingly finds that the fair market value of 101 Ledger Lane at the time of the scheduled closing, was $100,000.00. Proof regarding alternative measures of damages based on rent that could have been derived from the property was too speculative and is rejected by the court. Such proof was flawed in that its methodology failed to include vacancy assumptions and expense data (other than taxes) which would permit the court to assess damages in that fashion.
Thus, the court awards the plaintiffs $13,869 in contract damages. The plaintiffs are also entitled to recover the $8,600 deposit originally made on the property which Mr. LeDoux has continued to hold. Accordingly, the plaintiff is entitled to recover $22,469. plus statutory interest. Counsel is directed to prepare a form of judgment.