## RIVER ROAD REALTY, INC.

v.

## Anthony WASKAN and Linda Waskan.

### No. 97–631–A.

Supreme Court of Rhode Island.

April 16, 1999.

Robert S. Bruzzi, Providence.

Richard E. Kyte, Jr., Woonsocket.

### ORDER

This case came before the Court for oral argument on April 6, 1999, pursuant to an order that directed both parties to appear in order to show cause why the issues raised by this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time.

Anthony and Linda Waskan (defendants) are the owners of real property on Twin River Road in Lincoln, Rhode Island. In July of 1986, the Department of Environmental Management (DEM) notified the defendants about a wetlands violation on the property. The defendants entered into a consent agreement with the DEM in September of 1986, which required them to correct the violation within 60 days. Noncompliance with the consent agreement would result in a $1000 monetary penalty and monthly fines of $1000 until the violations were corrected. The defendants did not correct the violation and never paid the fine.

Nicola Africo (Africo or plaintiff), is the principal of River Road Realty and a friend of defendant Anthony Waskan. Africo offered to buy the property at issue from Waskan. Each party sought counsel and signed a purchase and sale agreement on June 28, 1998. The terms of the agreement included, among other things, a provision which explained the existing DEM violation and provided that the buyer, Africo, would cure the violations. Further, the purchase and sale agreement provided that Africo would "pay the sum of $325,000.00 [as a purchase price] of which an initial deposit of $25,000.00 has been paid this date, and an additional deposit of $25,000.00 shall be paid within sixth (60) days of this date." Anthony Waskan failed to mention the existence of the consent agreement with the DEM to plaintiff prior to the execution of the sales agreement.

Africo first learned of the consent agreement at a meeting with the DEM at which he sought to settle the outstanding violation. Until that point, Africo testified that he believed the violation could still be negotiated with the DEM. When he learned about the consent agreement, Africo confronted Anthony Waskan. Waskan apologized and explained that he forgot about the consent agreement. Waskan offered to return the initial deposit made by Africo and void the deal, but Africo wished to continue.

Africo testified that he never paid defendants the next $25,000 payment due under the sales agreement, "[b]ecause he agreed that we had a different ball game in our hands" since the consent agreement had been discovered, and "[i]t never come [sic] up." Between 1989 and 1992, no one performed work on the land and plaintiff made no further efforts toward the purchase of the land. Africo testified that he could not begin restoring the land in 1989 because financial problems forced to file

for bankruptcy relief relating to another company he owned. It was disclosed at oral argument that Africo later engaged in a personal bankruptcy proceeding.

In 1992, Africo's attorney received a call from DEM indicating that the outstanding violation had to be resolved immediately. Consequently, a meeting between Africo's attorney and DEM occurred. At that point, Waskan was still interested in selling the property to Africo. At the site meeting, DEM changed its position and required much less restoration work to resolve the problem, substantially lowering the estimated restoration cost. Satisfied with the new restoration requirements required by DEM, Africo left for California for six weeks on unrelated business. Upon his return, he found that Waskan had completed the necessary restorations to the property. Africo testified that when he requested Waskan to complete the sale, Waskan changed the price to $450,000, a $125,000 increase over the original agreed price.

Waskan testified that the refurbishing of the land occurred after a third party offered to complete the restoration for an inexpensive price. He denied increasing the price of the land after the restoration occurred. Waskan explained that he wanted Africo to share the excavation expense but never had the opportunity to discuss it with him. A dispute in this testimony exists, however, regarding any alleged price increase and the sharing of excavation expenses.

Instead, plaintiff filed the instant action for specific performance or, alternatively, damages in Providence County Superior Court. Sitting without a jury, the trial justice held that the plaintiff was not ready, able, and willing to perform its part of the contract. She found that plaintiff failed to perform its duty by not tendering the second $25,000 installment within the time specified by the sales agreement and by not curing the DEM violation. Further, the trial justice found that the parties did not have a meeting of the minds with

respect to the time for performance or an extension of time. Last, the trial justice held that at the time the parties signed the sales agreement, plaintiff had constructive notice of the consent agreement. On appeal, plaintiff challenges each of the trial justices findings.

In reviewing the decision of the trial justice sitting without a jury, this Court will not overturn a decision unless the trial justice misconceived or overlooked relevant evidence or was otherwise clearly wrong. *Citrone v. SNJ Associates*, 682 A.2d 92, 95 (R.I.1996). Specific performance is an equitable remedy that can be withheld by the trial justice for equitable reasons at his or her discretion. *Centerville Builders,. Inc. v. Wynne*, 683 A.2d 1340, 1342 (R.I.1996). Specific performance is not available as a matter of right but may be granted within the sound discretion of the trial justice. *Citrone*, 682 A.2d at 95. A trial justice's exercise of discretion will not be disturbed absent a clear showing of abuse of discretion. *Id.* A party who seeks the remedy of specific performance must show that he or she was ready, able, and willing to perform his or her part of the contract. *Griffin v. Zapata*, 570 A.2d 659, 662 (R.I.1990).

In the case before us, we cannot say that the trial justice abused her discretion in finding that plaintiff was not ready, able, and willing to perform its part of the contract. The purchase and sale agreement required plaintiff to make an additional payment of $25,000 to defendants within 60 days of the signing. Africo stated that he failed to comply with the purchase and sales agreement because, once learning of the terms of the consent agreement, he believed that the material terms of the purchase and sales agreement had changed. The purchase and sales agreement, however, expressly stated that plaintiff's "ability to cure said [DEM] violations is not a condition precedent to the performance of" the purchase and sales agreement. This fact, coupled with Africo's admission during direct examination that he

was not financially able to purchase the property, supports the trial justice's conclusion.

The trial justice also found that the parties did not have a meeting of the minds with regard to the time for performance and the extension of time. The trial justice reasoned that "[c]learly the plaintiff refused to perform on the contract as originally agreed upon. Whether a new contract was formed or whether the existing contract was modified and what [the] material terms were remains open and unproven." Regardless of any alleged modification to the material terms of the contract or the material terms of the new contract, we agree with the trial justice that plaintiff was not ready, able, and willing to perform its part of the contract.

Last, the trial justice found that plaintiff possessed constructive knowledge of the consent agreement. Although defendants did not mention the existence of the consent agreement to plaintiff prior to the execution of the purchase and sale agreement, the later agreement clearly disclosed the existence of an outstanding DEM violation. The plaintiff's signature upon the purchase and sales agreement reflects his acquiescence to the terms of that agreement. Therefore, the evidence supports the trial justice's finding of constructive knowledge regarding the consent agreement.

The trial justice also found that the plaintiff failed to prove its damages by a fair preponderance of the evidence. An examination of the record indicates that her finding was not clearly erroneous on this issue.

For the reasons stated, the plaintiff's appeal is denied and dismissed and the judgment of the trial justice is affirmed.