Dallas Pell YATES

v.

Valerie HILL and Valerie Hill, in her
capacity as Trustee of the D.
Valerie Hill Trust.

No. 99–533–Appeal.

Supreme Court of Rhode Island.

Nov. 6, 2000.

Turner C. Scott, for Plaintiff.

Thomas Dickinson, Providence, Richard Fisher, James F. Hyman, Newport, for Defendant.

Present: LEDERBERG, BOURCIER, and GOLDBERG, JJ.

# O P I N I O N

PER CURIAM.

The propriety of awarding specific performance against a seller of real estate forms the legal locus of this appeal. A trial justice granted a buyer's request for specific performance of a seller's agreement to transfer a certain parcel of real estate owned by a trust. The seller, however, had "second thoughts" about the sale, and through her attorney, asked to be "relieved of her obligations under the agreement." In addition, the seller signed the sales agreement in her individual capacity rather than in her capacity as the sole trustee of the trust. Under these circumstances, did the trial justice err in granting specific performance? No, we hold, for the reasons conveyed below.

Individually and in her capacity as Trustee of the D. Valerie Hill Trust, defendant-seller, Valerie Hill (Hill) appeals from a judgment entered in the Superior Court. A trial justice ordered her to specifically perform a purchase and sale agreement (agreement) for the sale of certain real estate in Newport (property) to the plaintiff-buyer, Dallas Pell Yates (Yates). This Court directed both parties to show cause why the issues raised by this appeal should not be summarily decided. After considering the parties' written and oral arguments, we conclude that no cause has been shown, and we proceed to decide this case at this time.

Yates contended that Hill had breached the agreement to sell the property to Yates. The property featured an ocean-front residence nestled on two acres abutting Newport's Bellevue Avenue. Yates averred that she had attempted to tender the one million dollar purchase price to Hill, that she had demanded that Hill convey the property to her as per their agreement, but that Hill had refused to do so, asserting that she was not the real owner of the property—rather, her trust held the title. Yates then went to court seeking reformation of the contract, specific performance, and damages arising from Hill's alleged breach.

A Superior Court justice tried this case without a jury. The evidence established that Hill had owned and resided at the property since 1976. On December 14, 1992, Hill transferred the property to a trust, of which she was the sole trustee. Despite the trust's ownership, Hill continued to rent the property and to maintain it in her individual capacity. As sole trustee, she also conceded that she had the power to sell or otherwise to dispose of the property.

Sporadically since 1988 Hill had listed the property for sale with her son, a real estate broker and owner of M.F. Hill Realty, Inc. From 1988 through 1997 she also had executed numerous listing agreements with her son's firm, and Hill's daughter, Melanie, had served as the listing agent for the property during various periods from 1988 through 1997.

In March 1998, Hill's property came to the attention of Yates's real estate agent, who made arrangements to show the house to her. After signing the agreement with Hill, Yates sold her home in New York and moved into her parents' Newport home on a temporary basis. But on September 18, 1998, Hill's daughter, Abbie, called Yates and stated that her mother was having "second thoughts" about selling the house. Several days later, Hill's other daughter, Melanie, called Yates and stated that "the deal was off, that Abbie was the one that was making the trouble * * *" and that "Abbie was discouraging her mother from moving on."

Nevertheless, on September 20, 1998, Yates was ready to close on the property. On September 24, 1998, Yates's real estate agent sent a letter to Melanie requesting a

closing date. A couple of days later, however, Hill's attorney, recognizing that a valid agreement had been signed by the parties, wrote a letter to Yates stating that Hill "no longer wishes to sell her property and is asking that you relieve her from her obligations under this agreement."

Hill claimed that she "was under a lot of pressure * * * and * * * didn't realize what [she] was doing" when she agreed to sell her house. Apparently, she had not discussed with her other daughters the prospect of selling the house to Yates. When she later did so, she said she learned how much the house meant to them. She admitted, however, that she had signed the agreement "freely and voluntarily." But she later concluded that she had made a mistake in signing it because she had not consulted an attorney and "hadn't thought about it enough."

The trial justice found that Hill "was fully aware of the obligations she was assuming when she signed the Purchase and Sale Agreement." She concluded that Hill's "about face is apparently a response to some disappointed children." The court also determined that it was irrelevant that the property was held in a trust, because "[f]or all intents and purposes, Mrs. Hill *is* that Trust." Further, the trial justice stated:

> "Mrs. Hill's commitment to the agreement was the product of an alert and intelligent mind. 'Having second thoughts' * * * 'disappointing her children' * * * thinking she 'made a mistake' months after the agreement, cannot furnish any legal basis for avoidance. The record is devoid of any evidence which could be interpreted as furnishing any sound reason for extinguishing defendant's obligations."

Finding that Yates "has, at all times, been ready, willing and able to close," the court granted specific performance and entered a final judgment in Yates's favor.

In support of her appeal, Hill raises numerous issues. She suggests that the trial justice reformed the contract with respect to Hill's capacity and that reformation was improper because Yates failed to prove mutual mistake. She also alleges that the trust should not be obligated under the agreement because Hill had not signed this contract in her capacity as trustee. Thus, Hill avers, enforcement of the agreement against the trust would violate the statute of frauds. Hill also suggests that she did not incur any liability on behalf of the trust because she signed the agreement solely in her individual capacity. Hill's final assignment of error is that Yates did not comply with the provisions of the agreement relating to a mortgage contingency, inspections, and state and local approvals, thereby rendering the agreement null and void because Yates was not ready, willing, and able to perform the contract. In sum, Hill's appeal asserts that the trial justice's findings were erroneous. Consequently, she asks us to reverse and vacate the judgment.

When reviewing the decision of a trial justice sitting without a jury, this Court will not reverse that ruling unless the trial justice misconceived or overlooked relevant evidence or was otherwise clearly wrong. See *River Road Realty, Inc. v. Waskan,* 735 A.2d 221, 222 (R.I. 1999). Although "[s]pecific performance is an equitable remedy that can be withheld by the trial justice for equitable reasons at his or her discretion," *id.* (citing *Centerville Builders, Inc. v. Wynne,* 683 A.2d 1340, 1342 (R.I.1996)), a grant of specific performance is appropriate when adequate compensation cannot be achieved through money damages; *see Griffin v. Zapata,* 570 A.2d 659, 661–62 (R.I.1990), or when, as here, a party to a real estate agreement unjustifiably refuses or fails to perform under the agreement. *See Jakober v. E.M. Loew's Capitol Theatre, Inc.,* 107 R.I. 104, 112, 265 A.2d 429, 434 (1970). On appeal we will not disturb a trial justice's ruling on a specific performance claim absent abuse of discretion or error of law on the part of the trial justice. *Griffin,* 570 A.2d at 661. Finally, "[a] party who

wishes to avail himself [or herself] of the unique remedy of specific performance must show that he [or she] was ready, able and willing to perform his [or her] part of the contract." *Id.* at 662 (quoting *Jakober,* 107 R.I. at 114, 265 A.2d at 435).

■ Here, the record shows that both parties mistakenly entered into the agreement based upon their belief that Hill individually owned the property. This mutual mistake, we hold, warranted reformation of the contract. To permit reformation of a contract, it must appear by reason of mutual mistake that the parties' agreement fails in some material respect to reflect correctly their prior understanding. See *Dubreuil v. Allstate Insurance Co.,* 511 A.2d 300, 302 (R.I.1986). "A mutual mistake is one common to both parties wherein each labors under a misconception respecting the same terms of the written agreement sought to be [reformed]." *Id.* at 302–03.

■ As the trial justice found, Hill had "clothed herself with the clear authority to convey this property" and that "[i]t would be unfair and inequitable to allow the seller to employ the device of the Trust to escape the obligations of the agreement." Yates testified that she always believed that Hill had the authority to sell the property, and Hill herself conceded that, as trustee, she possessed this power. Hill also maintained that Yates failed to obtain approval of permits to increase the height and extent of fencing on the property, a condition that Yates had added to the agreement. We consider this issue to be a red herring because Hill presented no evidence to contradict Yates's testimony that no permits were necessary for these changes. Moreover, because all the conditions at issue—obtaining a mortgage, inspections, and various governmental approvals—were for the benefit of the buyer, Yates could and did essentially waive satisfaction therewith by requesting a closing date and indicating to Hill that she was ready and willing to proceed with the sale. A party may waive a condition precedent if the condition is included for the benefit of the waiving party. *See,* e.g., *Jones v. United States,* 96 U.S. 24, 28, 13 Ct.Cl. 524, 24 L.Ed. 644, 646 (1877). More particularly, we hold that the filing of suit for specific performance—as Yates did here—implicitly waived any of the sale conditions that were for the benefit of the party seeking such relief.

Given these facts, we conclude that ample evidence supports the trial justice's findings in this case. It does not appear that the trial justice either misconceived or overlooked material facts or was otherwise clearly wrong. After carefully considering these and Hill's other arguments, we are of the opinion that the trial justice acted well within her discretion in granting specific performance.

Hence, we deny Hill's appeal and affirm the judgment of the Superior Court to which we return the papers in the case.

Justice FLANDERS did not attend the oral argument but participated on the basis of the briefs.

Chief Justice WEISBERGER did not participate.