Ronald T. BLANCHARD et al.

v.

Theresa Carmone WELLS et al.

No. 2003–248–Appeal.

Supreme Court of Rhode Island.

March 26, 2004.

Bruce H. Cox, Esq., for Plaintiff.

Gerard M. Decelles, Esq., for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

### OPINION

PER CURIAM.

The defendant,[1] Theresa Carmone Wells (Ms. Wells), a seller of real estate, appeals

1. Frank J. Carmone was also named as a defendant. The record indicates, however,

from a Superior Court judgment granting specific performance of a purchase and sales agreement to the plaintiffs, Ronald T. Blanchard and Doris S. Blanchard (the Blanchards or the buyers). Ms. Wells contends that the hearing justice erred in ordering specific performance because certain conditions delineated in the purchase and sales agreement had not been met. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised on appeal should not be summarily decided. After hearing the arguments of the litigants and examining the record and the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we summarily affirm the judgment entered in the Superior Court.

## Facts and Travel

Ms. Wells and her brother Frank J. Carmone, in his own behalf and as attorney-in-fact for various members of the Carmone family, own real property at the corner of Wood and Hope Streets in Bristol, Rhode Island (subject lot). In March 2002, they entered into a purchase and sales agreement (agreement) for the subject lot with the Blanchards.

On November 13, 2002, the Blanchards filed a complaint for specific performance and damages, asserting that Ms. Wells wrongfully refused to perform her contractual obligations under the agreement. The Blanchards allege that they were ready, willing, and able to complete the purchase, yet Ms. Wells refused to sign the deed. Ms. Wells, who after signing the agreement became concerned about buyers' plans to subdivide and develop the lot, contends that the buyers never obtained all the permits as required by the agreement. The Blanchards counter that they were willing to waive such contingencies. Additionally, defendant Frank J. Carmone filed a cross-action against Ms. Wells asserting that her breach of her contractual obligations under the purchase and sales agreement subjected him to damages. The hearing justice heard the case on January 22, 2003, and entered an order on January 28, 2003, granting specific performance of the purchase and sales agreement and ordering Ms. Wells to execute the deed within ten days from the receipt of the deed from the Blanchards. Ms. Wells filed a timely notice of appeal.

Ms. Wells argues on appeal that the hearing justice impermissibly interpreted the contract, depriving her of her right to insist upon the approval of all permits sought by the buyers. She contends that there still are outstanding permits that are necessary for planning, environmental, and building issues. Ms. Wells maintains that she relied upon the express terms of the agreement in refusing to execute the deed to the property, and that there is nothing in the agreement that requires her to waive the permit authorization contingency. She seeks to have this Court construe the agreement as giving her the right to refuse to sell the subject lot if the buyers do not obtain proper development permits.

The Blanchards argue that they have the right to close on the transaction without completing the permitting process for the land. They contend that the purchase and sales agreement expressly authorizes their waiver of the development permits. The Blanchards also allege that Ms. Wells was uncooperative and refused to sign the subdivision applications for submission to town officials.

that he joined the plaintiffs in requesting the court to order specific performance in the matter. He is not a party to this appeal.

## Purchase and Sales Agreement

Ms. Wells contests the hearing justice's interpretation of the purchase and sales agreement. Paragraph 13 of the agreement states that the property is being sold "AS IS." Paragraph 17 of the agreement permits the buyers to cancel the agreement if specific tests on the land reveal adverse information, stating, "[n]otwithstanding anything to the contrary in Section 13 * * * Buyer may choose to have any or all of the following tests conducted and/or approvals obtained as part of this Sales Agreement."

Paragraph 17 of the agreement refers to Addendum A as an "additional provision." Addendum A provides:

"Seller and Buyer acknowledge that Buyer will be required to apply and obtain permits from various agencies and authorities including but not limited to the RIDEM and the Town of Bristol. " * * *

"Sellers shall cooperate with the Buyers in the permitting process * * *.

"If the approvals are denied the deposit shall be returned to the Buyer."

Subsection (d) of Paragraph 17 of the agreement states, "[n]otwithstanding the foregoing, the Buyer may waive this contingency and accept the Property in 'AS IS' condition."

## Analysis

 A grant of specific performance is appropriate when "a party to a real estate agreement unjustifiably refuses or fails to perform under the agreement." *Yates v. Hill,* 761 A.2d 677, 679 (R.I.2000) (per curiam). It is well established that a judgment ordering specific performance will not be disturbed on appeal, provided the hearing justice's " 'discretion has been soundly and judicially exercised * * * in the light of reason applied to all the facts and with a view to the rights of all the parties to the action.' " *Sakonnet Point Marina Association, Inc. v. Bluff Head Corp.,* 798 A.2d 439, 443 (R.I.2002) (quoting *Citrone v. SNJ Associates,* 682 A.2d 92, 95 (R.I.1996)).

An order of specific performance generally will be affirmed, provided the deed is " 'sufficiently certain and definite in its terms to leave no reasonable doubt as to what the parties intended, and no reasonable doubt of the specific thing equity is called upon to have performed, and it must be sufficiently certain as to its terms so that the court may enforce it as actually made by the parties.' " *Sakonnet Point Marina Association, Inc.,* 798 A.2d at 443 (quoting *St. Lawrence v. Reed,* 74 R.I. 353, 357, 60 A.2d 734, 736 (1948)).

 Although Ms. Wells insists that the issuance of all development permits was a condition precedent to the closing, it is well established by this Court that "a party may waive a condition precedent if the condition is for the benefit of the waiving party." *Thompson v. McCann,* 762 A.2d 432, 436 (R.I.2000) (per curiam). In *Thompson,* 762 A.2d at 437, the contested purchase and sales agreement required the town council's approval on a liquor-license transfer to occur before the closing date. This Court concluded that the purchaser effectively waived that condition precedent by moving forward with the closing before receiving the approval. The buyer can effectively waive a condition "without breaching the contract or excusing the sellers' obligation to perform" when the condition is for the buyer's benefit. *Id.* Similarly, in *Yates,* 761 A.2d at 680, we concluded that because all of the conditions at issue—obtaining a mortgage, inspections, and various government approvals—were for the benefit of the buyer, the buyer effectively waived satisfaction by indicating to the seller that she was ready

to proceed with the sale. Additionally, we note our established rule that the buyer's filing of a suit for specific performance implicitly waives any conditions to the sale that were included in the contract for his benefit. *Id.*

In this case, we conclude that the conditions set forth in Paragraph 17 and Addendum A were for the protection of the Blanchards, as purchasers of the property. The language at issue clearly protects the buyers' interest. If the buyers determine through the permitting process that they are not able to develop the property as they wished, they have the right, per this contract, to withdraw from the deal without prejudice. This contingency is designed to shield the buyers from deficiencies in the property which might frustrate its intended use. No such provision in the agreement exists for Ms. Wells.

Ms. Wells did not gather any rights by signing Addendum A, but instead, only incurred responsibilities. The four corners of the purchase and sales agreement, along with Addendum A, are clear on this point. The buyers have the right to waive the approval and permitting contingencies and accept the property "as is"; the seller, however, is required to cooperate with the buyers' reasonable efforts to obtain such approvals and/or permits. The agreement places a measure of risk on the buyers. If they proceed to close the deal and then are unable to develop the land because of wetlands or other issues, they have assumed the risk. Here the Blanchards clearly have shown evidence that they wish to acquire the property notwithstanding the lack of permits. Thus, Ms. Wells may not insist that all permits be authorized before closing. The Blanchards, rather, are entitled to specific performance.

## Conclusion

After reviewing the record in this matter, the memoranda filed by both parties, as well as their oral arguments, we are convinced that ample evidence supports the hearing justice's finding in this case. There is no evidence that the hearing justice misconceived or overlooked material facts or was otherwise clearly wrong. The Blanchards were ready, willing, and able to purchase the property and waived any conditions that might delay the sale. The record demonstrates that Ms. Wells unjustifiably refused to perform her contractual obligations when the agreement provided her with no contractual right to halt the sale. Ms. Wells never expressed, as a contingency of the contract, a restriction that only a single-family home be built on the subject lot or that it could not be subdivided. Ms. Wells' unhappiness with the Blanchards' plans is certainly insufficient reason for her failure to perform in accordance with the terms of a valid contract.

We conclude that the purchase and sales agreement was sufficiently definite in its terms and left no reasonable doubt about what the parties intended. We are of the opinion that the hearing justice acted well within his discretion in granting specific performance. Therefore, we affirm the judgment of the Superior Court, to which we remand the papers of this case.