[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is the Intervener/Co-Plaintiff, LPD Development, LLC's ("LPD"), motion for partial summary judgment as to the Defendant/Plaintiff-in-Counterclaim, Eddy Carvalho's ("Carvalho"), breach of contract claim. LPD contends that the contract at issue — a purchase and sale agreement executed on March 12, 2001 — has previously been judicially declared valid and enforceable and that Carvalho is precluded from raising a breach of contract claim. Carvalho insists that LPD's summary judgment motion should be denied and that his counterclaim should be assigned to trial, alleging that genuine issues of material fact exist as to whether LPD performed on the contract within a reasonable time and whether it acted with due diligence and good faith in its performance. For the reasons herein, the Court grants LPD's motion.
 * * * * *
On March 12, 2001, Co-Plaintiff Robert Houghton ("Houghton") entered into a purchase and sale agreement (the "Agreement") with Carvalho, the land owner, to buy a parcel of land — identified as Assessor's Plat 20, Lot 15 (the "Property") — located on Breakneck Hill Road in Lincoln, Rhode Island. Under the terms of the Agreement, Houghton was to pay a $50,000 deposit ($25,000 at the time the Agreement was signed; an additional $25,000 within 30 days of its signing), and the remaining $875,000 of the purchase price at the time of the closing. While section 4 of the Agreement provides that the closing was to be held on May 31, 2001, section 23 states:
 "Sale is subject to all approvals from the State and Town of Lincoln for a 21 lot sub-division, said approvals to be paid for by seller). All state and local permits to be paid for by buyer. Buyer shall close within ten (10) days after all final approvals have been given."
Section 20 of the Agreement also contains a default provision stating that if either party defaults, the other is entitled to the deposit, specific performance, and any other available legal remedies.
At the time the Agreement was executed, Carvalho was involved in litigation with the Town of Lincoln in Providence County Superior Court (C.A. No. 00-5899) regarding a subdivision application that he had previously filed with respect to the Property. The Court had to determine which year's regulations were to be applied by the town Planning Board in assessing Carvalho's proposal. According to Carvalho, sometime in September of 2001, while his suit was pending, he met with Houghton, who told him that the subdivision approval process would take three to six months.
On December 27, 2001, the Court ruled that Carvalho's subdivision proposal was vested under the 1986 regulations of the Town of Lincoln and remanded the matter to the town's Planning Board. Shortly thereafter, on January 15, 2002, Houghton met with the Lincoln Town Solicitor and Town Administrator regarding the proposed subdivision of the Property. The town representatives expressed concerns with respect to the proposed sewage system and informed Houghton that it had to be altered.
Thereafter, Houghton assigned all of his rights and duties under the Agreement to LPD. Carvalho's then-attorney authorized LPD to "proceed with the development of the Subject Property for a residential subdivision in accordance with the plans submitted." LPD met with the Planning Board during the summer of 2002 and attempted to test the suitability of the land for installing individual septic disposal systems in December of that year, but because the ground was frozen the testing had to be postponed until the spring of 2003. Some time in late October or early November of 2003, the Department of Environmental Management ("DEM") application was prepared and ready for Carvalho to sign Although it is unclear exactly when Carvalho was presented with the DEM application for his signature, it is undisputed that he had received the document some time in the fall of 2003.
In an October 29, 2003 letter, Carvalho's attorney informed LPD's counsel that Carvalho considered LPD in breach of the Agreement because of its failure to receive approval for the subdivision and failure to proceed with the closing. As a result, Carvalho refused to sign the DEM application to allow LPD to move forward with the approval process. On January 5, 2004, LPD requested the Court to order Carvalho to sign the document. Thereafter, the parties signed a consent agreement, filed with the Court on March 29, 2004, stating that Carvalho agreed "to sign any and all applications, along with all the required plans, exhibits and documents and fees for processing any regulatory permits necessary to obtain approval for a subdivision." That consent agreement also provided that the purchase and sales contract was to remain in "full force and effect, without any waiver of claims or defenses, or ability to raise the same." On June 4, 2004, Carvalho finally signed the DEM application so that LPD could proceed with the approval process.
At a July 28, 2004 meeting, the Lincoln Planning Board voted to approve LPD's preliminary plan to develop a 13 lot subdivision on the Property. The Board also decided to delegate final plan approval to the Town Planner for recording, once all of the necessary state and local permits could be obtained and upon LPD's posting a performance bond to complete all of the required public improvements.
On November 5, 2004, while the permit applications were still pending, LPD filed an amended complaint with the Court seeking specific performance of the Agreement and alleging a breach of contract by Carvalho resulting from his refusal to acknowledge the validity of the Agreement and his obligations therein. Carvalho denied those allegations and, by counterclaim, alleged that LDP breached the Agreement by failing to perform.
Subsequently, LPD filed a motion for partial summary judgment, arguing that the assignment of the Agreement, and the Agreement itself, was valid and enforceable and, as a result, Carvalho was legally obligated to perform under the contract. Associate Justice Michael A. Silverstein issued a bench decision on April 26, 2005, granting LPD's motion. In his decision, he noted that "[t]he facts in this matter thereafter are somewhat twisted, but those twists do not impact the decision that the Court makes because they are not substantive or necessary to this decision." (Tr. at 3-4). Ultimately, he held that "the purchase and sale agreement constituted a valid and binding agreement; that the assignment of the purchase agreement was a valid and binding assignment." (Tr. at 6). Furthermore, in granting LPD's motion, Judge Silverstein stated:
 "[T]here is no question but that at all times the parties here have acted, as evidenced by the letter and as evidenced by the signing by Mr. Carvalho of the permits, consistently with the final sentences of Paragraph 23 of the purchase and sales agreement, calling for a close within ten days after all final approvals had been given." Id.
In addition to finding that the Agreement was valid and enforceable, Judge Silverstein's Order provides:
 "[T]he decision of the Court to grant LPD's Motion for Summary Judgment on the enforceability of the purchase and sales agreement is without prejudice to the right of Carvalho to contest before this Court the amount and reasonableness of the expenses he may be required to pay LPD pursuant to paragraph 23 of the Agreement in connection with LPD's procurement of all state and local approvals in this matter."
On June 1, 2005, LPD requested a one-year extension of the preliminary plan approval issued by the Planning Board because it had not yet received the DEM wetlands and individual septic disposal systems ("ISDS") suitability determination permits. (The Planning Board later granted the requested extension at its July 27 meeting.)
On June 3, 2005, LPD filed a Status Report with the Court, referencing a February 4, 2005 letter sent by the DEM to Carvalho which stated that the freshwater wetlands application had been reviewed and was found to be incomplete or deficient. In addition, the letter indicated what needed to be revised and/or provided so that the application could continue to be processed. LPD, however, had been unaware of the letter until its engineer received notice of the deficiency by a fax on April 26, 2005. Eventually, on July 26, 2005, the DEM issued the ISDS and Physical Alteration permits necessary to present the final plan for approval to the Town of Lincoln.
 * * * * * *
On a motion for summary judgment, the Court reviews admissible evidence in the light most favorable to the nonmoving party to determine whether the moving party is entitled to judgment as a matter of law. Weaver v.Am. Power Conversion Corp., 863 A.2d 193, 197 (R.I. 2005). "The moving party bears the initial burden of demonstrating the absence of material questions of fact. That burden may be satisfied by `submitting evidentiary materials, such as interrogatory answers, deposition testimony, admissions, or other specific documents, and/or pointing to the absence of such items in the evidence adduced by the parties.'"Santiago v. First Student, Inc., 839 A.2d 550, 552 (R.I. 2004) (citing and quoting Heflin v. Koszela, 774 A.2d 25, 29 (R.I. 2001)); Super. R. Civ. P. 56(c). In opposing the summary judgment motion, the nonmoving party will not be allowed to rely upon mere allegations or denials in its pleadings. Bourg v. Bristol Boat Co., 705 A.2d 969, 971 (R.I. 1998); Super. R. Civ. P. 56(e). Instead, by affidavits or otherwise, the nonmoving party is affirmatively obliged to set forth specific facts demonstrating the existence of a genuine issue of material fact. Id.
"Something more than conclusory statements must be offered by the party opposing the entry of a summary judgment." Id. (quoting Gallo v. NationalNursing Homes, Inc., 106 R.I. 485, 489, 261 A.2d 19, 21-22 (1970)).
 * * * * *
LPD argues that it is entitled to partial summary judgment because the Court has already determined that the Agreement is valid and enforceable and, as a result, under the law of the case doctrine, the Court cannot now hold the Agreement to be unenforceable. Although LPD acknowledges that there remains to be determined the allowable expenses and costs to be set-off against the purchase price as a result of Carvalho's alleged failure to pay for the State and Town approvals pursuant to Section 23 of the Agreement, LPD maintains that summary judgment nonetheless lies and that the Court should order Carvalho to proceed with the closing. LPD suggests that the Court order up to $130,000.00 be placed in escrow pending the determination of those ancillary expenses.
Carvalho contends that summary judgment should not be granted because there remain some legal issues to be determined independent of whether the Agreement is valid and enforceable by its terms. Carvalho also claims that a genuine issue of material fact exists as to whether, considering the absence of a "time-is-of-the-essence" clause, LPD performed its duties as set forth in the Agreement within a reasonable time. In addition, Carvalho maintains that partial summary judgment should not issue because the Court must determine whether LPD committed a substantial delay, meriting an award of damages.
 Waiver
As a threshold matter, Carvalho argues that because LPD is seeking specific performance prior to receiving final approval of the subdivision, it has effectively waived its right to benefit from Section 23 of the Agreement which allows LPD to close following receipt of such approval. The Court disagrees.
Although a party may effectively waive a condition for its benefit by seeking specific performance prior to the condition being met, that does not mean that the party resisting performance is entitled to do so as a result of the failure of the occurrence of a condition provided for the other's benefit. See Blanchard v. Wells, 844 A.2d 695 (R.I. 2004) (despite seller's argument that the buyers were not entitled to specific performance because they never obtained all the permits required by the purchase and sale agreement, the buyers had the right to waive permit contingencies and seek specific performance); see Thompson v. McCann,762 A.2d 432, 436 (R.I. 2000). Accordingly, Carvalho cannot now renege on the Agreement merely because LPD may not have exercised its right to obtain final approval of the subdivision prior to the closing.
 The Law of the Case Doctrine
"Under the law-of-the-case doctrine, `ordinarily, after one judge has decided an interlocutory matter in a pending suit, a second judge on that same court, when confronted at a later stage of the suit with the same question in the identical manner, should refrain from disturbing the first ruling.'" Buonanno v. Colmar Belting Co., 736 A.2d 86, 87 (R.I. 1999) (quoting Richardson v. Smith, 691 A.2d 543, 546 (R.I. 1997)). "The purpose of the law of the case doctrine is to ensure `the stability of decisions and avoid unseemly contests between judges that could result in a loss of public confidence in the judiciary.'" Chavers v. Fleet Bank(RI) N.A., 844 A.2d 666 (R.I. 2004) (quoting Commercial Union Ins. Co.v. Pelchat, 727 A.2d 676, 683 (R.I. 1999)). The Rhode Island Supreme Court has declined to apply the law-of-the-case doctrine where the "issue did not present itself to the second judge in the same manner in which the first judge examined the issue." Buonanno, 736 A.2d at 87. See Torresv. Damicis, 853 A.2d 1233, 1242 (R.I. 2004) (law of the case doctrine not applied where second motion justice did not disturb any rulings made by the first motion justice).
The issues now before the Court are not identical to those decided by Judge Silverstein in LPD's prior motion for partial summary judgment. Judge Silverstein held that "the purchase and sale agreement constituted a valid and binding agreement [and] that the assignment of the purchase agreement was a valid and binding assignment." Here, the validity of the Agreement and/or the assignment is not in question; rather, the Court must determine whether there are genuine issues of material fact regarding the application of the Agreement. More specifically, the Court must consider Carvalho's breach of contract counterclaim which alleges that LPD breached the Agreement by unreasonably delaying its performance. The issue of whether the valid agreement was subsequently breached has not yet been reached, and this Court is not being presented with the same question in an identical manner as was previously presented to and decided by Judge Silverstein. Therefore, the law-of-the-case doctrine is inapplicable.
 Time of Performance
In an effort to pursue his breach of contract counterclaim, Cavalho says that a genuine issue of material fact exists as to whether LPD breached the Agreement by failing to obtain the necessary approval for a subdivision within a reasonable time. In the absence of a stipulation regarding specific time for performance, it is said that a contract for the sale of land ought to be performed within a "reasonable time." Durepov. May, 73 R.I. 71, 75, 54 A.2d 15, 18 (1947). See Safeway System, Inc.v. Manual Bros., Inc., 102 R.I. 136, 145-46, 228 A.2d 851, 856-57
(1967); Lajayi v. Fafiyebi, 860 A.2d 680 (R.I. 2004). "What is a reasonable time depends upon the circumstances of each case." Id.
Carvalho has failed to meet his burden of presenting an adequate basis to demonstrate that a genuine issue of material fact exists as to whether LPD acted within a reasonable time. Carvalho's half-hearted attempt to submit any such evidence is contained in his affidavit wherein he says (1) that he was initially told by Houghton that the approval process would take three to six months, (2) that he interpreted a statement by Paul Larisa of LPD, "if you think this is a mess you should have seen the one I was in in Massachusetts with my partner," to mean that LPD lost interest in the project, and (3) that LPD failed to obtain any approval for a two-year period because, he believes, it did not have the financial ability to buy the property. These claims amount to nothing more than barren and conclusory allegations that are insufficient to surmount a summary judgment motion. See Small Bus. Loan Fund Corp. v. Loft,734 A.2d 953, 955 (R.I. 1998) (cursory and conclusory affidavit in opposition to a motion for summary judgment, where most of the assertions related to issues raised in the counterclaim and amounted to general denials or reiterations of allegations in the pleadings, was insufficient to defeat the motion for summary judgment).
Last year, in Lajayi v. Fafiyebi, the Rhode Island Supreme Court noted that contract provisions that refer to time do not automatically or necessarily transmute that reference to a time-is-of-the-essence mandate. 860 A.2d at 688. The Court stated that the underlying principle "does not mean that a party can be completely oblivious to a stipulation in a contract relating to time, but it assumes that a party to a contract will proceed in good faith towards the completion of his undertaking." The Lajayi decision is instructive as to what should be considered in determining whether a buyer has performed within a reasonable time. There, the Court used the buyer's diligence and good faith as the litmus test for reasonableness.
Here, Carvalho has failed to present any evidence indicating that LPD was not diligent or that it somehow acted in bad faith in seeking approval for the subdivision. In fact, the record more than suggests a contrary conclusion. It was, after all, Carvalho who delayed the approval process by impermissibly refusing to sign documents and by failing to inform LPD of the DEM deficiency letter. The only perceptible delay that could somehow, if at all, be laid at LPD's doorstep occurred when the ground was too frozen to test its suitability for individual septic disposal systems. Any such postponement, however, was not as a result of LPD's actions. It is the view here that Carvalho has failed to set forth any articulable foundation that might expose a genuine issue of material fact to support his empty breach of contract claim. Accordingly, LPD is entitled to the summary judgment it seeks.
 Specific Performance
LPD further argues that specific performance is warranted and that Carvalho should be ordered to proceed with the closing because LPD has received all of the necessary permits to present the final plan for approval to the Town of Lincoln. Granting the equitable remedy of specific performance lies within the sound discretion of the trial justice. EasternMotor Inns v. Ricci, 565 A.2d 1265, 1271 (R.I. 1989). "It is well established that the party who wishes to avail himself of the unique remedy of specific performance must show that he was ready, able and willing to perform his part of the contract." Jakober v. E.M. Loew'sCapitol Theatre, 107 R.I. 104, 114, 265 A.2d 429, 435 (1970).
Having obtained all of the requisite permits in support of its application, and there being nothing left undone but to present the final plan to the Town for approval and move forward with the construction of the planned subdivision, LPD has clearly demonstrated that it was at all times ready, able, and willing to perform on the contract once that final approval was issued. As a result, LPD is entitled to this Court's order of specific performance of the Agreement and an order directing Carvalho to proceed with the closing. See, Lajahji, 860 A.2d at 1688.
 * * * * *
Lastly, this Court orders that $130,000.00 of the purchase price be placed in the registry of the Court, in escrow, pending a determination on the amount of the allowable ancillary expenses and costs referred to earlier.
Counsel shall submit an appropriate judgment for entry.