DECISION
This matter is before the Court on the Plaintiffs' prayer for preliminary injunction.[1] An evidentiary hearing was held on January 13, 2006, after which the parties presented post-hearing memoranda. In accordance with R.C.P. 52(a) the following constitutes the Court's findings of fact and conclusions of law.
 STANDARD OF REVIEW
A trial justice, in deciding whether to issue a preliminary injunction, should determine whether the moving party "(1) has a reasonable likelihood of success on the merits, (2) will suffer an irreparable harm without the requested injunctive relief, (3) has the balance of the equities, including the possible hardships to each party and to the public interest, tip in its favor, and (4) has shown that the issuance of a preliminary injunction will preserve the status quo." Iggy's Doughboys, Inc. v. Giroux,729 A.2d 701, 705 (R.I. 1999).
 FINDINGS OF FACT
At the hearing, Plaintiffs presented the testimony of two witnesses, Nathan Lauder, a licensed land surveyor, and Robert Collins, the Plaintiff. In considering that testimony, for purposes only of this hearing on preliminary injunction, the Court finds as follows:
 1. That the Plaintiffs, Robert and Frances Collins, have owned a parcel of land situated on the corner of Langworthy Road and Pine Woods Court in the Town of Westerly, Rhode Island since 1983 (Assessors Plat 122 Lot 45). The property had previously been owned by Mr. Collins' father.
 2. The property to the north of the Plaintiffs' property is owned by the Defendants (Assessors Plat 122, Lot 34A).
 3. The boundary between the Collins' property and the adjoining property to the north was, prior to and during ownership by the Plaintiffs, demarcated by a fence, which at first was constructed of chicken wire, and later a "snow fence" construction.
 4. During Plaintiffs' ownership of the property, in approximately 1984, along the northerly property line, the Plaintiffs replaced the snow fence with a hedge row of approximately 50 arborvitae shrubs, extending approximately one-hundred and twenty feet in length. Those shrubs are now mature plantings having a height of eight to ten feet.
 5. For over 20 years since the shrubs were planted, plaintiffs have maintained the hedges, contracted several times each year for fertilization of these shrubs, trimmed them, and maintained them. The physical boundary as established by this shrubbery is physical and obvious.
 6. In April, 2005, Nathan Lauder, a licensed surveyor, was retained by the Defendants to survey the Defendants' property adjoining the Collins' property to the north, including a survey of the boundaries of the property. According to the survey, the actual surveyed property line between the two properties would indicate that the arborvitae hedge planted by the Collins in approximately 1984 is on the property of the Defendants. On the west end of the property line, the arborvitae are planted approximately four feet north of the surveyed boundary; on the east end, the plantings are approximately two feet north of the surveyed boundary.
 7. In July, 2005, Mrs. Sienkiewicz wrote to the Plaintiffs and indicated that it has been "established" that the arborvitae were planted on her property, and that it was her intention "to cut them down." This July, 2005 letter indicating an intention to "reclaim" the property from the point of the arborvitae plantings south to the surveyed boundary was the first time that either the Defendants or their predecessor in title ever indicated any dispute as to the natural hedges, or to the previous fence, as demarcating the northerly/southerly boundary between the adjoining properties.
 8. Since their planting in approximately 1984, the Collins have maintained the area from their home north to the arborvitae hedges as their own, and neither the defendants nor their predecessor in title have questioned the location of the arborvitae hedge nor requested its removal, until the letter from the Defendant received in July, 2005. The parties have acquiesced since approximately 1984 until the survey performed in 2005 that the arborvitae hedge forms the boundary between the Plaintiffs' property to the south of the hedge, and the Defendants' property to the north of the hedge.
 CONCLUSIONS OF LAW
In this neighborly dispute, the legal questions at play are nearly identical to those recently addressed by our Rhode Island Supreme Court in the case of Acampora v. Pearson, No. 2005-299-Appeal, slip op. at 10 (R.I., filed June 6, 2006). In that case the trial justice found that the physical boundary marked by a series of plantings — arborvitae and evergreens — was sufficiently obvious to place the defendants and their predecessors in title on notice of the claim that this natural boundary to which the defendants had acquiesced for more than ten years, constituted the accepted boundary between the two properties. The Court cited to Pucino v. Uttley, 785 A.2d 183
(R.I. 2001), as standing for the proposition that acquiescence to an observable physical boundary line constitutes a recognized means by which a claimant can gain title to real estate encompassed by that boundary line, even though another party clearly possesses record title to the land. Id. at 186.
It seems to this Court that the Plaintiffs have established a likelihood of succeeding on the merits of their claim to title by virtue of the doctrine of acquiescence. Based on the uncontradicted testimony elicited at the hearing on preliminary injunction, it is likely that the Plaintiffs will succeed in showing that a clearly established, obvious, physical boundary marker — in this case the row of arborvitae bushes extending nearly the entire length of the northern boundary of the Plaintiffs' property — has been recognized and accepted by the parties for a period in excess of ten years. The Acampora Court recognized that, "homeowners often plant shrubs or bushes to mark a division of property in an aesthetically pleasing manner."Id. at 9. As in Acampora, the record before this Court clearly evidences that the plantings were made, as Mr. Collins testified, for the purpose of establishing the border between the two properties, which border had previously been established by a fence. The Collins are seeking to enjoin any effort by the Defendants to destroy or otherwise remove the natural boundary, thus, distinguishing this case from Acampora wherein the Court articulated the distinction between a claim of title by acquiescence, and a claim of title by adverse possession. Since no claim is being asserted by the Plaintiffs to any land north of the arborvitae border, this case can be resolved at the preliminary injunction stage by utilizing exclusively the title by acquiescence doctrine without the need to discuss the more expansive issues that might exist in an adverse possession analysis. The Court finds that the Plaintiffs have established their likelihood of success on the merits sufficient to support the issuance of a preliminary injunction.
As to the other factors in the preliminary injunction analysis, the Court also finds that injunctive relief is necessary to prevent irreparable harm to the Plaintiffs. Land is unique, and determinations of title to land are considered appropriate for injunctive relief. See Pucino, 785 A.2d at 185-86; seealso Griffin v. Zapata, 570 A.2d 659, 661-62 (R.I. 1990) (wherein the Court discusses the equitable nature of specific performance and its appropriate application in a dispute that involves a unique and distinctive item, such as land.) In addition, the testimony herein establishes that the shrubbery threatened with destruction by the Defendants was established for over twenty years, and has attained a height and girth that justifies describing them as "mature" plantings. The shrubs create a fence-like barrier between the two properties. Allowing these mature plantings to be removed now, pending a trial on the merits, could not easily be remedied by subsequent new plantings if the Plaintiffs ultimately prevail on the merits. Accordingly, the Plaintiffs have established irreparable harm.
The Court further finds that the equities favor the Plaintiffs, whose line of natural fencing has gone undisturbed for over twenty years. Only recently, armed with a survey performed in April, 2005, have the Defendants objected to the border created by the shrubbery. The fact that the shrubs do not extend the entire length of the northern border, and that theoretically the Defendants could enter the Plaintiffs' property through the gap at the east end of the property line is of no consequence to the balance of the equities favoring the Plaintiffs.
Finally, the maintenance of the status quo, that is, the border accepted by the parties for more than twenty years, clearly is a factor favoring the issuance of the preliminary injunction.
For all the above reasons, this Court will issue the preliminary injunction as prayed for by the Plaintiffs. The parties will submit an appropriate form of order consistent with this decision.
[1] The Court initially issued an ex parte restraining order preventing the defendants from removing or destroying the hedges which the plaintiffs contend form the boundary line between the two adjoining parcels. By agreement of the parties, the restraining order has remained in full force and effect pending the Court's determination of the motion for preliminary injunction.